1998 ND 7

**Kathleen A. LOHSTRETER, Plaintiff and Appellant,**

v.

**Bruce A. LOHSTRETER, Defendant and Appellee.**

Civil No. 970130.

Supreme Court of North Dakota.

Jan. 20, 1998.

Order Supplementing Opinion on Denial of Rehearing Feb. 12, 1998.

Chapman and Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman.

Foss and Moore, Bismarck, for defendant and appellee; argued by Sherry Mills Moore.

MESCHKE, Justice.

[¶ 1] Kathy Lohstreter appealed a decree of divorce from Bruce Lohstreter, challenging the terms of visitation, the division of marital debts, and the denial of spousal support. We affirm the visitation terms, modify the debt division, reverse the denial of spousal support, and remand with instructions.

[¶ 2] Kathy and Bruce married on March 14, 1975, and had four children. Three of the children were minors at the time of trial, but now only two are, Todd, age 16, and Lisa, age 12. When Kathy filed for divorce on March 13, 1995, the parties had been married twenty years, but recently they had been twice separated, spending more than three and one-half years apart.

[¶ 3] Kathy had not had significant employment outside the home, but concentrated on raising their children. Near the end of the marriage, Kathy returned to school, and was close to completing a nursing degree.

[¶ 4] Bruce had been employed with various banking and investment businesses, and his employments often took him away from home. Bruce abused alcohol, and had undergone at least four separate treatment evaluations. His alcohol abuse contributed both to their marital discord and to his employment difficulties. In 1991, Bruce plead guilty to driving while intoxicated, with a blood-alcohol level of 0.28, while his son Lance, then age 11, had been a passenger. The court had ordered Bruce to complete alcohol treatment. He enrolled in treatment, but did not finish it. He did, however, later complete another treatment program, but continues to use alcohol.

[¶ 5] Bruce and Kathy separated in June 1992 for a year, reconciled for a month, and were again separated for two and a half years before the divorce. During the brief reconciliation, Kathy contracted two sexually transmitted diseases, Chlamydia and Human Papilloma Virus (HPV), a chronic viral infection. Bruce originally accused Kathy of getting these diseases from an affair, but later confessed he had had a three-year affair with a woman in Denver. During the separations, the children lived with Kathy, but visited Bruce on a consensual schedule of every other weekend and one night a week. At trial, Bruce consented to custodial placement of the children with Kathy, but contested the transportation limitations sought by Kathy.

[¶ 6] The trial court granted a divorce for irreconcilable differences, placed custody of the three children with Kathy, but gave Lance, age 17, and Todd, age 15, "full control over all visitation with [their] father including timing, frequency and mode of transportation." The court set visitation with Lisa, then age 12, in keeping with the consensual schedule used during the separations. Once she reached 16, however, the court directed Lisa would control her visitations like her older brothers. Until then, the trial court gave Kathy the right to refuse the mode of transportation chosen by Bruce, if she pro-

vided alternate transportation at her own cost.

[¶ 7] The trial court valued the gross marital estate at $99,993, and the marital debt at $73,751. The court distributed the home with an equity near $50,000 and its $28,515 mortgage to Kathy. The court gave each the personal property in their possession, valuing Kathy's at $8,545 and Bruce's at $12,933. The trial court allocated debts of $48,533 to Kathy, including the home mortgage, and allocated debts of $25,218 to Bruce, thus distributing net values of $38,527 to Kathy and of a minus net $12,285 to Bruce. Finding Kathy had not been disadvantaged by the divorce, the trial court denied spousal support.

[¶ 8] On appeal, Kathy argues Bruce's continued use of alcohol requires more restrictive visitation. She contends the property division does not equitably reflect Bruce's economic misconduct during the marriage. She argues she was disadvantaged by the marriage and is entitled to spousal support.

I. *Visitation*

[¶ 9] Kathy argues the trial court, in setting visitation, "arbitrarily disregard[ed] the testimony of [her] expert when nothing can be discerned in the record to contradict the expert opinion." Kathy's expert, a licensed addiction counselor, testified her concerns for the children's safety were legitimate, since Bruce was an alcoholic who continued to drink. This expert questioned the advisability of an alcoholic driving with children, and opined Kathy's apprehension was "a very prudent response." Kathy argues the expert's uncontradicted opinion bound the trial court to restrict the mode of transportation to protect the children.

[¶ 10] "The trial court's decision on visitation is a finding of fact that will not be reversed on appeal unless it is clearly erroneous." *Zuger v. Zuger*, 1997 ND 97, ¶ 36, 563 N.W.2d 804; N.D.R.Civ.P. 52(a). As we explained in *Huesers v. Huesers*, 1997 ND 33, ¶ 6, 560 N.W.2d 219 (citations omitted), "[a] finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, has a

definite and firm conviction that the trial court has made a mistake."

[¶ 11] Two of these children are now over the age of 18, one is 16, and one is 12. As a practical matter, the 16–year–old is close to majority, and will have more voice in visitation than the 12–year–old. The trial court appropriately gave some discretion to the mother to step in and to safeguard the youngest child from riding with the father when necessary by granting Kathy the "right of refusal" for Lisa until she reached age 16. On this record, we cannot say the "right of refusal" given Kathy for only Lisa's transportation was erroneous.

[¶ 12] Although a trial court cannot unreasonably disregard expert testimony, it is not required to accept even the undisputed testimony of an expert. *Gardebring v. Rizzo*, 269 N.W.2d 104, 109 (N.D.1978); *In re Estate of Zent*, 459 N.W.2d 795, 799 (N.D. 1990). Where a parent has a continuing problem with alcohol, a trial court's placement of some restrictions on that parent transporting a child for visitation is a prudent measure to protect the child. The trial court did that for Lisa.

[¶ 13] The trial court set visitation largely like the consensual schedule used while these parents had been separated. This voluntary arrangement had worked well. Therefore, we affirm the ordered terms of visitation.

II. *Property Division and Spousal Support*

[¶ 14] The trial court distributed property valued at $87,000 to Kathy and valued at $12,933 to Bruce, while allocating $48,533 of debt to Kathy and $25,218 of debt to Bruce. The trial court denied Kathy any spousal support.

[¶ 15] On appeal, Kathy argues the allocation of debts is clearly erroneous because the trial court did not adequately consider Bruce's economic fault. She also contests the trial court's finding she was not disadvantaged by the marriage, and she argues she is entitled to spousal support.

[¶ 16] We recently summarized our standard of review for property division in *Zuger*, 1997 ND 97 at ¶ 6 (citations omitted):

The trial court must make an equitable distribution of the marital property, based upon the facts and circumstances of each individual case. The court's determinations on valuation and division of property are findings of fact that will only be reversed on appeal if they are clearly erroneous. A finding is clearly erroneous only if the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made.

Similarly, in *Beals v. Beals,* 517 N.W.2d 413, 415–16 (N.D.1994), we explained a trial court's findings of fact about spousal support will not be set aside unless clearly erroneous. As *Heley v. Heley,* 506 N.W.2d 715, 718 (N.D.1993), and *Glander v. Glander,* 1997 ND 192, ¶ 7, 569 N.W.2d 262, explain, property division and spousal support are interrelated, and often must be considered together.

[¶ 17] The trial court tried to explain this property and debt division without spousal support:

... the Court, by not including a spousal support award, has left, on balance, the home and a future positive cash flow to the wife, while assigning most of the debt and very little of the property to the husband. He is presently employable at a substantial income. This disparity in division is also justified because of the conduct of the husband during the marriage.

Bruce argues, "although the distribution is unequal, *really* unequal, it is equitable." (emphasis original). We are not persuaded. The trial court's basic assumption, that "the debt amassed, directly or indirectly, [has inured] to the benefit of the entire family," is not supported by the record. Also, the trial court's finding Kathy was not disadvantaged by the marriage is not supported by the record.

[¶ 18] This family's financial instability was largely attributable to Bruce's actions. Bruce had gone through at least ten employers in the past few years. His frequent changes in employment resulted from alcohol abuse and overspending. He had had career-high earnings in excess of $72,000 annually, but he was earning only $50,000 currently. A significant portion of the family's assets have been used to fund Bruce's alcoholic treatments and to pay off credit-card debts he accumulated during the separations.

A $37,000 IRA was cashed to pay such debts, and that resulted in a lingering federal income tax liability of over $10,000 with an associated state income tax debt of $1,446. As a result, the IRS has threatened to levy against the home distributed to Kathy.

[¶ 19] The trial court divided the tax debts equally between Bruce and Kathy. Although there is conflict in the testimony on how these tax liabilities came about, it appears they were the result of a joint decision to cash the IRA. Accordingly, we affirm allocation of the tax debts as appropriate.

[¶ 20] However, the record does not support the allocations of other debts. Of the $13,300 balance on a MBNA credit card, Bruce was ordered to pay $9,650 and Kathy $3,650. Yet, at trial, Bruce admitted these charges, as well as credit card debts of $4,700 to Discover and $4,500 to Citibank, were his alone. He stated these debts arose during the separations to "meet [my] needs and the needs including payment of support."

[¶ 21] Where one spouse has accumulated debt for his own personal benefit and to pay court-ordered support to a separated spouse, that debt should not be shifted to the supported spouse. The trial court's debt allocation had the effect of requiring Kathy to reimburse Bruce for part of his support payments to her. This was error. On remand, we direct the entire MBNA debt of $13,300 be assigned to Bruce.

[¶ 22] Because none of the Discover and Citibank debts were allocated to Kathy, we do not disturb those allocations to Bruce. Those credit cards were in Bruce's name alone, and were clearly for Bruce's personal use and obligations during the last separation. These debts have little or no bearing on the property division or on spousal support in this case.

[¶ 23] The trial court made Kathy solely responsible for the $10,000 balance due on her education loans. Because Kathy was close to graduating, the trial court also found "she has not been disadvantaged by this divorce" and denied her spousal support. Kathy's return to school and completion of her degree have worked to Bruce's advan-

tage, yet it resulted from Kathy's own initiative, hard work, and frugality while separated. Even with her imminent nursing degree, the trial court was clearly erroneous in finding Kathy was not disadvantaged by this marriage. She was saddled with family debts from Bruce's financial irresponsibility as well as for her own education. She had yet to begin employment at the age of 42. Without other property to distribute to equalize the burdens and disadvantages of this marriage to Kathy, spousal support is critical.

[¶ 24] Rehabilitative spousal support is intended to restore an economically disadvantaged spouse to an independent status or to equalize the burden of the divorce. *Lill v. Lill*, 520 N.W.2d 855, 856 (N.D.1994). Here, since Kathy's rehabilitation is being accomplished at her own expense, she should receive some rehabilitative spousal support to help retire her educational debt and to embark on employment.

[¶ 25] A trial court must consider all of the relevant factors under the *Ruff–Fischer* guidelines when deciding spousal support, as well as in dividing marital property. *See Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). We have approved spousal support to enable a disadvantaged spouse to obtain a college degree. *Pfliger v. Pfliger*, 461 N.W.2d 432, 436 (N.D.1990). In another case, we also reversed a denial of spousal support where the trial court had concluded a spouse was not disadvantaged by divorce because she "received education during the marriage, has an adequate salary and is self supporting." *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377. There, we pointed out rehabilitative spousal support is often still important even where the disadvantaged spouse was already working. *See also Wiege v. Wiege*, 518 N.W.2d 708, 710 (N.D.1994); *Wahlberg v. Wahlberg*, 479 N.W.2d 143, 145 (N.D.1992); *Williams v. Williams*, 302 N.W.2d 754, 758 (N.D.1981). Paraphrasing *Van Klootwyk* at ¶ 18, we conclude, having begun her rehabilitation on her own during the marriage, Kathy should not be denied rehabilitative spousal support, especially when the cost of going from financially dependent to adequately self-support-ing has not been equitably shared by her former spouse.

[¶ 26] Bruce contends spousal support is inappropriate because his current income less his current child support obligation and Kathy's potential total income as a nurse, with the addition of his child support, would be nearly the same. However, her beginning pay would no doubt reflect lack of experience, and she would still be saddled with educational debts as well as family debts. Bruce's argument also ignores that Kathy was not yet employed at the time of the divorce, and her child support will soon drop drastically as two of the three supported children reach majority. Correspondingly, reduced child support will leave Bruce well ahead of Kathy in spendable income.

[¶ 27] Other *Ruff–Fischer* factors support an order of spousal support here. Assets of this lengthy marriage are minimal. While Kathy has the house, it is still encumbered by a significant mortgage. Kathy's years of caring for the children and homemaking have enabled Bruce to improve his economic status, although he has squandered much of that advantage through alcohol. Bruce admittedly engaged in an extra-marital affair, and his marital misconduct broke this marriage. We are left with a definite and firm conviction that a mistake has been made in saddling Kathy with her entire educational debt and denying her any spousal support.

[¶ 28] Spousal support is particularly appropriate here as an obligation that will survive, even if Bruce's overspending should eventually lead to his personal bankruptcy. *See Redlin v. Redlin*, 436 N.W.2d 5, 8 (N.D.1989)("[P]roperty payments are dischargeable in bankruptcy, unlike spousal-support payments."); 11 U.S.C.A. § 523(a)(5) (1990)("A discharge under ... this title does not discharge an individual debtor from any debt ... to a ... former spouse ... for ... support of such spouse."). We reverse the denial of spousal support and remand for a determination of Kathy's educational expenses to frame an appropriate award of rehabilitative spousal support.

[¶ 29] We also instruct the trial court to retain jurisdiction of spousal support to permit modification for a significant change

of circumstances. *See van Oosting v. van Oosting*, 521 N.W.2d 93, 101 (N.D.1994); *Lucy v. Lucy*, 456 N.W.2d 539, 544 (N.D. 1990); *Branson v. Branson*, 411 N.W.2d 395, 398 (N.D.1987). Two circumstances may warrant additional spousal support later. First, Kathy was infected with HPV as a result of an extra-marital affair by Bruce. *See McAdoo v. McAdoo*, 492 N.W.2d 66, 69 (N.D.1992)(HPV can be a chronic viral infection that sometimes develops into cancer). Retention of jurisdiction over spousal support will protect Kathy should her HPV infection bring her greater problems.

[¶ 30] Another reason to retain jurisdiction over spousal support arises from the circumstance that Bruce may one day inherit a portion of his parent's sizeable estate. Since this future inheritance was not a vested present interest and is speculative, it could not be considered by the trial court for property division, though Kathy asked for a share. Yet, should this inheritance be realized, it may have a significant bearing on future spousal support.

[¶ 31] We affirm the visitation as ordered by the trial court. We reverse and remand debt allocations and spousal support for modifications consistent with this opinion.

[¶ 32] VANDE WALLE, C.J., and MARING, J., concur.

NEUMANN, Justice, concurring and dissenting.

[¶ 33] I concur in the majority's treatment of visitation and spousal support. I agree Kathy is clearly a disadvantaged spouse, entering a new career at this point in her life. The only question that currently cannot be answered is the full extent of Kathy's disadvantage; only time will tell us that. Some present award of rehabilitative spousal support, with the opportunity for adjustment in the future as may be needed, is required.

[¶ 34] However, I must respectfully dissent from the majority's reversal and remand of the debt allocation. The majority has separated the trial court's allocation of debts from the rest of the property distribution, and has criticized the allocation of part of a debt without regard to the net effect of the entire property distribution. The only "clear error" identified by the majority relating to property distribution is the allocation of part of the MBNA debt to Kathy. I can agree with the majority that, standing alone, the allocation of $3,650 of the MBNA debt to Kathy makes very little sense, when we know part of that debt was incurred to pay court-ordered support to Kathy. The problem is this allocation of debt does not stand alone. It is part of the entire property distribution, and can only properly be considered in the context of the entire property distribution. The trial court gave Kathy a property award with a net positive value of $38,527. The award to Bruce had a negative value, minus $12,285. The difference between the two is $50,812. The net value of the entire marital estate was only $26,242. When considered in the full context of the entire distribution, I cannot agree the allocation of part of the MBNA debt to Kathy is clearly erroneous.

[¶ 35] By separating the MBNA debt allocation from the rest of the property distribution, and analyzing that allocation without regard to the net effect of the entire distribution, the majority has dressed its action to look like an application of legal principle. In fact, the majority has retried the evidence in this case, and has simply arrived at a different finding. We often inform lawyers and litigants who request such retrials on appeal that we do not do them. We should adhere to that principle in this case, too.

> "The existence of any doubt as to whether the trial court or this Court is the ultimate trier of fact issues in non-jury cases is, we think, detrimental to the orderly administration of justice, impairs the confidence of litigants and the public in the decisions of the district courts, and multiplies the number of appeals in such cases." (Citations omitted.) "Rule 52(a) [N.D.R.Civ.P.] should be construed to encourage appeals that are based on a conviction that the trial court's decision has been unjust; it should not be construed to encourage appeals that are based on the hope that the appellate court will second-guess the trial court." (Citation omitted.)

*Buzick v. Buzick*, 542 N.W.2d 756, 758–59 (N.D.1996).

[¶ 36] Dale V. Sandstrom

ON PETITION FOR REHEARING

PER CURIAM.

[¶ 37] Kathy sought attorney fees and costs in both the trial court and this court. In her Petition for Rehearing, Kathy Lohstreter asks us to direct the trial court to act on those requests for attorney fees and costs, since we did not. On remand, we direct the trial court to determine an award of attorney fees to Kathy for the trial court proceedings and for this appeal under NDCC 14–05–23, based on the financial status of the parties, her need, and Bruce's ability to pay. *See McIntee v. McIntee*, 413 N.W.2d 366, 367 (N.D.1987). We supplement our opinion accordingly, and otherwise deny the Petition for Rehearing.

[¶ 38] VANDE WALLE, C.J., and MESCHKE, SANDSTROM, NEUMANN and MARING, JJ., concur.