2001 ND 45

**Kathleen A. LOHSTRETER, n/k/a Kathleen A. Heintz, Plaintiff, Appellee, and Cross–Appellant,**

v.

**Bruce A. LOHSTRETER, Defendant, Appellant, and Cross–Appellee.**

No. 20000094.

Supreme Court of North Dakota.

March 5, 2001.

Charles L. Chapman, Chapman & Chapman, Bismarck, ND, for plaintiff, appellee and cross-appellant.

Arnold V. Fleck, Fleck Law Office, Bismarck, ND, for defendant, appellant and cross-appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Bruce Lohstreter appealed a second amended judgment ordering him to pay $16,700 in spousal support and $12,000 in attorney fees. Kathleen Heintz cross-appealed claiming the trial court erred in reducing Bruce's child support payment, the trial court erred by not considering gifts from Bruce's parents as income for purposes of calculating child support, and the trial court abused its discretion in failing to require Bruce to pay all of the minor child's uninsured medical expenses. We affirm.

I

[¶ 2] Bruce and Kathleen married on March 14, 1975, and divorced on April 23, 1997. They have four children. One child is still a minor. Kathleen appealed the original divorce decree, challenging the visitation terms, division of debt, and the denial of spousal support and attorney fees. This Court affirmed the visitation terms, modified the division of debt, and reversed the denial of spousal support and attorney fees. *Lohstreter v. Lohstreter*, 1998 ND 7, ¶¶ 1, 37, 574 N.W.2d 790. The spousal support award was remanded for a "determination of Kathy's educational expenses to frame an appropriate award of rehabilitative spousal support." *Id.* at ¶ 28. Concerning attorney fees, this Court directed the trial court to determine an award of attorney fees to Kathleen for the trial and appeal "based on the financial status of the parties, her need, and Bruce's ability to pay." *Id.* at ¶ 37.

[¶ 3] On remand, the trial court entered an "Order For Judgment On Remittitur" on April 2, 1998. This order did not specify the amount of spousal support or attorney fees but, without specific findings and conclusions, simply reiterated the directives of *Lohstreter*.

[¶ 4] Bruce failed to pay his $1,063 per month child support and was ordered incarcerated in March 1999. Upon payment of $10,872.33 received from his mother, Bruce was released on March 23, 1999.

[¶ 5] On April 1, 1999, Bruce filed a motion to amend the judgment seeking modification of his child support obligation because his income had decreased substantially. Kathleen opposed the motion to modify child support and filed a cross-motion seeking an award of $18,000 in spousal support, $24,000 for attorney fees,

and sought an order requiring Bruce to pay all or a share of the medical expenses of the children. A hearing was held on November 29, 1999.

[¶ 6] Bruce earned $50,000 a year as an investment broker at the time of the original divorce trial in September 1996, but lost that job and two subsequent jobs. At the time of the November 1999 hearing, Bruce worked as a general laborer grossing $1383 a month. Bruce was planning to take a job selling insurance with a projected annual income of $20,000, once he reinstated his license to sell insurance. Bruce received money from his parents totaling $25,100 in 1997, $6,115 in 1998, and $22,000 in 1999.

[¶ 7] Kathleen obtained $16,700 in loans to fund her nursing education. Her attorney fees for the divorce trial and appeal totaled $24,000. Kathleen obtained her nursing degree and was working as a nurse earning $29,000 a year at the time of the November 1999 hearing. Kathleen remarried on June 12, 1999.

[¶ 8] The trial court issued a second amended judgment on January 21, 2000. The trial court reduced Bruce's child support obligation from $1,063 to $441 for April, May and June of 1999, when their third child graduated from high school. The obligation was further reduced to $330 per month from July 1999 until the youngest child graduates from high school or turns 19 years old. The trial court awarded Kathleen spousal support of $500 a month for a total of $16,700, an amount equal to the loans taken to pay for education costs for her nursing degree, and awarded attorney fees of $12,000, half of Kathleen's total attorney fees of $24,000. The trial court also ordered the parents to share equally the costs of uninsured medical expenses of the minor children.

## II

[¶ 9] Bruce argues the trial court erred by ordering him to pay spousal support of $500 per month until he paid the sum of $16,700. Bruce claims there has been a material change of circumstances that justifies a change in spousal support because Kathleen is remarried and is working as a nurse and earning more than Bruce earns.

[¶ 10] A trial court's determination regarding a material change in circumstances warranting a modification of spousal support is a finding of fact and will not be reversed on appeal unless it is clearly erroneous. *Greenwood v. Greenwood*, 1999 ND 126, ¶ 15, 596 N.W.2d 317. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. *Schiff v. Schiff*, 2000 ND 113, ¶ 10, 611 N.W.2d 191.

[¶ 11] We long ago rejected the rule that remarriage automatically terminates the obligation to pay spousal support, *Nugent v. Nugent*, 152 N.W.2d 323, 327 (N.D.1967), especially for rehabilitative support. *Rustand v. Rustand*, 379 N.W.2d 806, 807 (N.D.1986). When the circumstances are appropriate, rehabilitative spousal support may continue after the remarriage of the disadvantaged spouse. *Mahoney v. Mahoney*, 1997 ND 149, ¶ 31, 567 N.W.2d 206; *Bullock v. Bullock*, 376 N.W.2d 30, 31 (N.D.1985). In *Mahoney*, we held the trial court's extension of rehabilitative spousal support after remarriage was supported in part by the disadvantaged spouse's continued rehabilitative needs for a two-year internship to secure a license to practice as a psychiatric nurse. *Mahoney*, 1997 ND 149, ¶ 32, 567 N.W.2d 206. In *Bullock*, 376 N.W.2d at 31, we affirmed the continuance of rehabilitative spousal support after remarriage that was intended to pay expenses for teaching re-certification.

[¶ 12] Kathleen has already incurred the rehabilitative expense of obtaining her nursing degree. This expense was incurred near the end of the marriage. In

*Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 24, 574 N.W.2d 790, we determined "since Kathy's rehabilitation is being accomplished at her own expense, she should receive some rehabilitative spousal support to help retire her educational debt and to embark on employment." We reversed the trial court's denial of spousal support because we were "left with a definite and firm conviction that a mistake has been made in saddling Kathy with her entire educational debt and denying her any spousal support." *Id.* at ¶ 27. Kathleen's subsequent remarriage does not affect our holding that Bruce needs to reimburse Kathleen for the rehabilitation expenses she incurred prior to the divorce that were not equitably shared. *See Van Klootwyk v. Van Klootwyk,* 1997 ND 88, ¶ 20, 563 N.W.2d 377.

[¶ 13] Bruce also contends the trial court erred by awarding Kathleen spousal support because Kathleen's under-developed earning capacity has been restored while his income has declined substantially. Spousal support payments may be modified only upon a showing of a material change of circumstances which justifies a modification. *Pearson v. Pearson,* 2000 ND 20, ¶ 12, 606 N.W.2d 128. A "material change" is something which substantially affects a party's financial abilities or needs, and the reason for changes in income must be examined as well as the extent the changes were originally contemplated by the parties. *Id.* Not every financial change in circumstances justifies a modification, and when the change is self-induced no modification is warranted. *Greenwood v. Greenwood,* 1999 ND 126, ¶ 16, 596 N.W.2d 317.

[¶ 14] In *Lohstreter,* 1998 ND 7, ¶ 18, 574 N.W.2d 790, we stated this family's financial instability was largely attributable to Bruce's actions such as his frequent changes in employment resulting from alcohol abuse and overspending. By the time of the divorce trial in September 1996, Bruce had changed employers at least ten times in a few years, decreasing from his career-high earnings in excess of $72,000 to an annual salary of $50,000. *Id.* at ¶ 18. After the trial, Bruce lost his job in October 1996, he lost his next job in November 1997, and in January 1999, he lost another job. Bruce was working as a general laborer at the time of the trial in November 1999, but plans to work selling life insurance, annuities and trust products once his license to sell insurance, which lapsed because of Bruce's failure to maintain continuing education credits, is reinstated. Kathleen's spousal support is in the nature of reimbursement for past expenses incurred to enable Kathleen to live without future support from Bruce. Bruce's current income is not indicative of his ability to earn income. Under these circumstances, we conclude the trial court was not clearly erroneous in ordering Bruce to pay rehabilitative spousal support of $16,700 to reimburse Kathleen for education expenses.

## III

[¶ 15] Bruce argues the trial court abused its discretion by awarding Kathleen one-half of her attorney fees because Bruce no longer has the ability to pay and Kathleen no longer has the need for such support.

[¶ 16] An award of attorney fees is within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. *Weigel v. Weigel,* 2000 ND 16, ¶ 16, 604 N.W.2d 462. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner or when its decision is not the product of rational mental process. *Id.* In deciding whether to award attorney fees in a divorce action, the trial court must balance one party's needs against the other party's ability to pay. *Id.*

[¶ 17] This Court directed the trial court to determine an award of attorney fees to Kathleen for the trial court proceedings and for the earlier appeal under N.D.C.C. § 14–05–23, based on the finan-

cial status of the parties, her need, and Bruce's ability to pay. *Lohstreter,* 1998 ND 7, ¶ 37, 574 N.W.2d 790. The trial court found Kathleen incurred $24,000 in attorney fees through the trial and the appeal. Finding Kathleen's need for attorney fees was moderate and Bruce's ability to pay was ample, the trial court ordered Bruce to pay one-half, or $12,000, of Kathleen's attorney fees. Our analysis of the spousal support issue is applicable to the issue of attorney fees. The trial court was not arbitrary, unreasonable, or unconscionable. The trial court did not abuse its discretion by awarding Kathleen one-half of her attorney fees. We affirm the award of attorney fees of $12,000 to Kathleen.

IV

[¶ 18] Kathleen argues the trial court erred in reducing Bruce's child support because there is no evidence to support the finding Bruce was not underemployed, there is no evidence to support the trial court's projection of Bruce's income, and the trial court erred by failing to consider money received from his parents as in-kind income for purposes of calculating child support. The trial court found Bruce was not underemployed as defined by N.D. Admin.Code § 75–02–04.1–07(2) and therefore did not impute income to Bruce. Kathleen argues that despite the guidelines, the court should impute income to Bruce based on his true earning capacity under N.D. Admin.Code § 75–02–04.1–07(3).

[¶ 19] Section 14–09–09.7(1), N.D.C.C., authorizes the Department of Human Services to establish child support guidelines and subsection three of that statute creates a rebuttable presumption that "the amount of child support that would result from the application of the child support guidelines is the correct amount of child support." N.D.C.C. § 14–09–09.7(3). Child support amounts are determined by applying the calculations required by the regulations, and these calculations result in an amount of child support

which is presumptively correct. *Montgomery v. Montgomery,* 481 N.W.2d 234, 235 (N.D.1992).

[¶ 20] Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and, in some limited areas, may be matters of discretion subject to the abuse of discretion standard of review. *Lauer v. Lauer,* 2000 ND 82, ¶ 3, 609 N.W.2d 450.

[¶ 21] A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. *Lauer,* 2000 ND 82, ¶ 3, 609 N.W.2d 450. Thus, the trial court must clearly set forth how it arrived at the amount of income and level of support. *Id.* The trial court's findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous. *Richter v. Houser,* 1999 ND 147, ¶ 3, 598 N.W.2d 193. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id.* In reviewing findings of fact, we give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of the witnesses. *Wagner v. Wagner,* 2000 ND 132, ¶ 12, 612 N.W.2d 555. We do not re-weigh evidence or reassess credibility where there is evidence to support a trial court's findings. *Tishmack v. Tishmack,* 2000 ND 103, ¶ 7, 611 N.W.2d 204. The trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.*

[¶ 22] A trial court is authorized to impute income to an obligor only if the obligor is unemployed or underemployed. N.D. Admin.Code § 75–02–04.1–07(3); *Berg v. Ullman,* 1998 ND 74, ¶ 35, 576 N.W.2d 218. An obligor is presumed to be underemployed if gross income from earnings is less than "[s]ix-tenths of prevailing

amounts earned in the community by persons with similar work history and occupational qualifications; or [o]ne hundred sixty-seven times the federal hourly minimum wage." N.D. Admin.Code § 75–02–04.1–07(2).

[¶ 23] Here the trial court finds it is highly unlikely Bruce will work again as an investment broker. As a result the trial court found his income will likely be commensurate with that of other insurance sales agents. Testimony at the hearing by individuals in the investment industry supported this conclusion. The trial court found, according to a North Dakota wage survey, insurance agents in central North Dakota earn approximately $33,000 a year. Six-tenths of $33,000 is $19,800; therefore if Bruce's income is less than $19,800 he is presumed to be underemployed. Bruce estimates his annual income will be $20,000 and he is willing to have his child support obligation based on that amount. The trial court's finding was not clearly erroneous.

[¶ 24] Kathleen argues money received from Bruce's parents were gifts not loans and therefore should be included in the calculation of Bruce's gross income. Bruce testified he received from his parents $25,100 in 1997, $6,115 in 1998, and $22,000 in 1999. Both he and his mother testified these amounts were loans, not gifts.

[¶ 25] The definition of gross income under the child support guidelines is very broad and does specifically include "gifts and prizes to the extent they annually exceed one thousand dollars in value" and "value of in-kind income received on a regular basis." N.D. Admin.Code § 75–02–04.1–01(5). However, loans are not included in the definition of gross income. In *Cook v. Eggers*, 1999 ND 97, ¶ 11, 593 N.W.2d 781, we reversed and remanded, directing the trial court to include the value of a regular spending allowance of $200 to $250 per week from Cook's boyfriend and the value of living rent-free in his house in the child support calculation. In contrast to this case, Cook admitted the weekly allowance was a gift and she was

living rent-free. *Id.* at ¶ 8. Bruce testified the money received from his parents is a loan, the money was used to make up for past shortcomings in his income to pay living expenses and child support, and therefore, it was not relevant to the projection of future income. The trial court's decision to not include the money received from Bruce's parents in Bruce's gross income was not clearly erroneous.

V

[¶ 26] Kathleen argues the trial court abused its discretion by ordering the parents to share equally the medical expenses not covered by insurance. Kathleen contends Bruce should be responsible for the medical expenses for their son's hockey injury which occurred during a time there was no insurance coverage because Bruce had let the coverage lapse in January 1999, and did not inform her of the lack of coverage until March 1999.

[¶ 27] The divorce order stated Bruce must maintain health insurance for the minor children so long as it was available to him at no or nominal cost. Bruce maintained health insurance coverage for the children through January 1999. He argues he was not required to maintain coverage because he was unemployed and insurance was no longer available to him at no or nominal cost. Kathleen argues she would have obtained health insurance coverage for the children if Bruce had informed her of his decision to not maintain coverage. The trial court found both arguments had merit and ordered the uncovered medical expenses be shared equally. Under these circumstances the trial court did not abuse its discretion by ordering the parents to equally share the uncovered medical expenses of the minor children.

[¶ 28] We affirm.

[¶ 29] SANDSTROM, NEUMANN, MARING, KAPSNER, JJ., concur.