2015 ND 38

Carl Michael HOVERSON,
Plaintiff and Appellee

v.

Sandra Morten HOVERSON,
Defendant and
Appellant.

No. 20140198.

Supreme Court of North Dakota.

Feb. 12, 2015.

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jon J. Jensen, Judge.

Scott D. Jensen, Grand Forks, N.D., for plaintiff and appellee.

Robert J. Schultz, Fargo, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Sandra Hoverson appeals from an amended divorce judgment denying her motion to modify spousal support and parenting time, granting Carl Hoverson's motion to modify parenting time and to appoint a parenting coordinator, and granting Carl Hoverson's request for attorney fees. We affirm the amended judgment.

I

[¶ 2] In 2012, Carl and Sandra Hoverson were divorced in a judgment awarding Sandra Hoverson about $2.8 million and Carl Hoverson about $11.6 million in marital property and awarding her spousal support of $3,000 per month for two years, child support of $3,002 per month and attorney fees. The judgment granted Sandra Hoverson primary residential responsibility of the parties' minor child, subject to Carl Hoverson's right to parenting time as outlined in a schedule in the judgment. We affirmed the judgment in *Hoverson v. Hoverson*, 2013 ND 48, ¶¶ 1, 28, 828 N.W.2d 510, holding the district court did not clearly err in distributing the parties' marital estate and in awarding Sandra Hoverson spousal support and child support and did not abuse its discretion in awarding her attorney fees. *Id.* at ¶¶ 12, 18, 22, 26.

[¶ 3] Carl Hoverson thereafter moved to enforce the divorce judgment's schedule for parenting time, or alternatively, for appointment of a parenting coordinator to establish a parenting time schedule consistent with the judgment. He also sought attorney fees for his motion. Sandra Hoverson moved to limit Carl Hoverson's parenting time, to modify spousal support by increasing the amount and duration of support and for attorney fees for her motion. After an evidentiary hearing, the district court modified the order for parenting time and appointed a parenting coordinator, denied Sandra Hoverson's motion for modification of spousal support and granted Carl Hoverson's request for attorney fees.

II

[¶ 4] Sandra Hoverson argues the district court clearly erred in denying her motion to increase the amount and the duration of spousal support. She claims the court clearly erred in concluding Carl Hoverson's income was irrelevant to his spousal support obligation and in finding she failed to show a substantial change in circumstances to modify his spousal support obligation. Carl Hoverson responds the court did not err in analyzing his income in the context of the court's initial award of spousal support. He also argues the court did not clearly err in finding she failed to show a material change in circumstances to modify his support obligation.

[¶ 5] Under N.D.C.C. § 14–05–24.1, a district court retains jurisdiction to modify spousal support awarded in an original divorce judgment. A party seeking modification must show a material change in financial circumstances warranting modification. *Gibb v. Sepe*, 2004 ND 227, ¶ 7, 690 N.W.2d 230. A material change in circumstances is a change substantially affecting the financial abilities or needs of the parties which was not contemplated at the time of the original decree. *Id.* In assessing whether a material change in circumstances has occurred, the reasons for changes in the parties' income or needs must be examined, as well as the extent to which the changes were contemplated at the time of the initial decree. *Quamme v. Bellino*, 2002 ND 159, ¶ 14, 652 N.W.2d 360. Not every change in the parties' financial circumstances justifies modification of support, and no modification is warranted when a change is self-induced.

*Lohstreter v. Lohstreter,* 2001 ND 45, ¶ 13, 623 N.W.2d 350.

[¶ 6] A district court's determination on a material change in circumstances warranting modification of spousal support is a finding of fact and will not be reversed on appeal unless clearly erroneous. *Rothberg v. Rothberg,* 2007 ND 24, ¶ 6, 727 N.W.2d 771. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the trial court made a mistake." *Edward H. Schwartz Constr., Inc. v. Driessen,* 2006 ND 15, ¶ 6, 709 N.W.2d 733 (quoting *Brandt v. Somerville,* 2005 ND 35, ¶ 12, 692 N.W.2d 144). Under the clearly erroneous standard of review, we do not reassess the witnesses' credibility or reweigh conflicting evidence. *Driessen,* at ¶ 6. "The district court has the advantage of judging the credibility of witnesses by hearing and observing them and of weighing the evidence as it is introduced, rather than from a cold record." *Stanhope v. Phillips–Stanhope,* 2008 ND 61, ¶ 10, 747 N.W.2d 79. "A district court's choice between two permissible views of the evidence is not clearly erroneous." *Id.* Nor do we substitute our judgment for a district court's decision merely because we might have reached a different result. *Driessen,* at ¶ 6.

[¶ 7] In *Hoverson,* we affirmed the district court's initial spousal support award and rejected Sandra Hoverson's argument for permanent spousal support, explaining:

"In conjunction with the district court's analysis of the *Ruff–Fischer* guidelines, the court found that the parties' marriage was short-term, that Sandra Hoverson had an established career in radiologic technologies before the marriage, that she spent significant time in Florida during the marriage and did not significantly contribute to the marital household or assist Carl Hoverson in building his career, that Carl Hoverson did not commit non-economic fault and his economic fault in transferring marital property to his sons from a prior marriage was addressed in the property distribution, that the parties' substantial disparity in income was addressed by the property distribution, that Sandra Hoverson could be equitably rehabilitated, and that she had the ability to work outside the home.

"Spousal support and property division are intertwined. *Kostelecky v. Kostelecky,* 2006 ND 120, ¶ 14, 714 N.W.2d 845. Sandra Hoverson was awarded about $2.8 million in the court's property distribution. Although Carl Hoverson received about $11.6 million in the property distribution and has a greater earning capacity than Sandra Hoverson, the court found she has a demonstrated earning ability outside the home and has maintained her license and continuing education credits. Sandra Hoverson's arguments generally ignore the court's findings that the parties' marriage was a short-term marriage and she could be rehabilitated. Although the duration of spousal support awarded in this case could be problematic under other circumstances, in this case, Sandra Hoverson testified she was not interested in returning to work as a radiologic technician, but has not cited specific evidence about the extent of any necessary or potential retraining.

"On this record, we conclude the district court's findings are sufficient to understand the rationale for the court's decision. We are not left with a definite and firm conviction the court made a mistake in awarding Sandra Hoverson spousal support of $3,000 per month for two years. We conclude the court's

spousal support award is not clearly erroneous."

2013 ND 48, ¶¶ 16–18, 828 N.W.2d 510.

[¶ 8] In denying Sandra Hoverson's motion to modify spousal support, the district court considered her request in the context of the court's earlier rejection of permanent spousal support and award of rehabilitative spousal support, which the court said was premised on providing her an opportunity to acquire an education and work skills to become self-supporting. In that context, the court explained Carl Hoverson's income at the time of the divorce was not a limiting factor in the initial award of spousal support and any claimed increase in his income was not a material change in circumstances. The court also explained Sandra Hoverson failed to provide sufficient evidence to consider how any claimed increases in distributions to Hoverson Farms impacted Carl Hoverson's income. In finding no material change in circumstances, the court found Sandra Hoverson failed to make a good faith effort to obtain employment and the parties contemplated at the time of the divorce that she may not return to work.

[¶ 9] The district court provided an explanation about Carl Hoverson's income and the claimed increased distributions from Hoverson Farms, stating his income was not a limiting factor to the court's initial decision about rehabilitative spousal support. In the context of assessing the district court's earlier decision awarding rehabilitative spousal support for two years, the court's statements indicate it did not determine an obligor's income was never relevant to a motion to modify a spousal support obligation; rather, the court's statements indicate Carl Hoverson's income in this case was not determinative in the court's initial decision to award rehabilitative spousal support and his income had a similar stature for Sandra Hoverson's motion to modify rehabilitative spousal support. In the context of this case and the court's explanation, we are not left with a definite and firm conviction the court made a mistake in assessing Carl Hoverson's income.

[¶ 10] The district court found Sandra Hoverson failed to make a good faith effort to obtain employment, stating that outside of her general and conclusory statements about her job search, she provided no evidence of her job search efforts, or that she made efforts to pursue further education or training. Evidence supports the district court's findings and statements about Sandra Hoverson's efforts to obtain employment or to pursue further education and training. We are not left with a definite and firm conviction the court made a mistake in finding Sandra Hoverson failed to establish a material change in circumstances to modify spousal support. Therefore, the court did not clearly err in denying her motion to modify spousal support.

III

[¶ 11] Sandra Hoverson argues the district court clearly erred in denying her motion to modify parenting time. She argues the court clearly erred in precluding her from having any input with a parenting coordinator regarding parenting time decisions and in expanding the authority of the parenting coordinator to modify the existing divorce decree in violation of N.D.R.Ct. 8.11(c)(3). Carl Hoverson responds the court's order precluding Sandra Hoverson from having input with the parenting coordinator pertained to the mechanical application of the court's prior order for parenting time and was justified based on her conduct regarding his exercise of parenting time. He also argues the court did not expand the authority of the parenting coordinator and did not clearly err in modifying parenting time.

[¶ 12] Section 14–05–22, N.D.C.C., grants a district court continuing jurisdiction to modify parenting time. *Prchal v. Prchal*, 2011 ND 62, ¶ 10, 795 N.W.2d 693. "To modify [parenting time], the moving party must demonstrate a material change in circumstances has occurred since entry of the previous [parenting time] order and that the modification is in the best interests of the child." *Prchal*, at ¶ 11 (quoting *Dufner v. Trottier*, 2010 ND 31, ¶ 6, 778 N.W.2d 586). "A district court's decision to modify [parenting time] is a finding of fact, which will not be reversed on appeal unless clearly erroneous." *Prchal*, at ¶ 11 (quoting *Dufner*, at ¶ 6).

[¶ 13] In *Prchal*, we discussed factors impacting a material change in circumstances and the best interests of the child in the context of a motion to modify parenting time:

"To modify parenting time, 'a material change of circumstances occurs when important new facts arise that were unknown at the time of the initial [parenting time] order.' *Dufner*, 2010 ND 31, ¶ 7, 778 N.W.2d 586 (citing *Helfenstein [v. Schutt]*, 2007 ND 106, ¶ 18, 735 N.W.2d 410). *See also Young v. Young*, 2008 ND 55, ¶¶ 14–15, 746 N.W.2d 153 (mother's scheduling problems, together with the child's recent behavior, constituted sufficient material change in circumstances) (citing *Ibach v. Zacher*, 2006 ND 244, ¶ 10, 724 N.W.2d 165 (mother's out-of-town move and father's illness a sufficient material change); *Simburger v. Simburger*, 2005 ND 139, ¶ 18, 701 N.W.2d 880 (mother's agreement for unsupervised visitation with father followed by mother's unwillingness to allow unsupervised visitation constituted a material change); *Reinecke v. Griffeth*, 533 N.W.2d 695, 698–99 (N.D. 1995) (son's attention deficit disorder diagnosis coupled with the visitation's interference with son's school work is an implied material change)).

"Our decisions also provide the standard to determine whether a modification is in a child's 'best interests' based on the factual circumstances of each case. *See Dufner*, 2010 ND 31, ¶¶ 9–10, 778 N.W.2d 586 (affirming visitation modification where court found children were frustrated with incessant bickering between parents and stating '[c]ontinually exposing a child to adult conflict is not in that child's best interests'); *Reinecke*, 533 N.W.2d at 698–99 (holding modification was in the children's best interests where original visitation order interfered with their weeknight routine, contributing to behavior problems at home, poor performance at school and causing conflict between the parents)."

2011 ND 62, ¶¶ 12–13, 795 N.W.2d 693.

[¶ 14] We initially consider Sandra Hoverson's arguments about her lack of input with the parenting coordinator and the claimed improper expansion of the parenting coordinator's authority to modify the divorce decree.

[¶ 15] Section 14–09.2–01, N.D.C.C., describes authority and duties of a parenting coordinator and provides:

"A parenting coordinator is a neutral individual authorized to use any dispute resolution process to resolve parenting time disputes. The purpose of a parenting coordinator is to resolve parenting time disputes by interpreting, clarifying, and addressing circumstances not specifically addressed by an existing court order. A parenting coordinator:

"1. May assess for the parties whether there has been a violation of an existing court order and, if so, recommend further court proceedings.

"2. May be appointed to resolve a one-time parenting time dispute or to

provide ongoing parenting time dispute resolution services. Parenting time dispute also means a visitation dispute under existing orders.

"3. Shall attempt to resolve a parenting time dispute by facilitating negotiations between the parties to promote settlement and, if it becomes apparent that the dispute cannot be resolved by an agreement of the parties, shall make a decision resolving the dispute."

[¶ 16] Section 14–09.2–04, N.D.C.C., deals with decisions of a parenting coordinator and provides:

"Within five days of notice of the appointment, or within five days of notice of a subsequent parenting time dispute between the same parties, the parenting coordinator shall meet with the parties together or separately and shall make a diligent effort to facilitate an agreement to resolve the dispute. The parenting coordinator may confer with the parties through a telephone conference or other means. A parenting coordinator may make a decision without conferring with a party if the parenting coordinator makes a good-faith effort to confer with the party. If the parties do not reach an agreement, the parenting coordinator shall make a decision resolving the dispute as soon as possible but not later than five days after receiving all of the information necessary to make a decision and after the final meeting or conference with the parties. The parenting coordinator shall put the agreement or decision in writing and provide a copy to the parties. An agreement of the parties or a decision of the parenting coordinator is binding on the parties until further order of the court."

[¶ 17] Rule 8.11(c), N.D.R.Ct., describes the roles and responsibilities of a parenting coordinator and provides, in part:

"A parenting coordinator shall:

. . . .

"(3) Facilitate the resolution of disputes regarding the implementation of the parenting plan, the schedule, or parenting time issues provided such resolution does not involve a substantive change to the court's order."

[¶ 18] In *Dieterle v. Dieterle*, we considered the interplay of statutes and rules regarding the authority of a parenting coordinator and said:

"Allowing neutral individuals to resolve disputes between the parties, so long as access by the parties to the district court is allowed for ultimate resolution of the dispute, is not an improper delegation of judicial power. *See generally Wolt [v. Wolt]*, 2010 ND 26, ¶ 40, 778 N.W.2d 786. For example, in *Yates v. Yates*, 963 A.2d 535, 540–41 (Pa.Sup. Ct.2008), the Superior Court of Pennsylvania ruled that the appointment of a parenting coordinator to resolve ancillary custody disputes was not an improper delegation of judicial authority. The court noted that 'if the parties are dissatisfied with the parenting coordinator's decision, they can appeal it to the trial court' for de novo review. *Id.* at 541. Similarly, under North Dakota law a parenting coordinator has no authority to make substantive changes to a court's order, and if a party disagrees with the devised parenting plan and brings that disagreement to the court's attention, it becomes the duty of the court to 'issue a parenting plan considering the best interests of the child.' N.D.C.C. § 14–09–30."

2013 ND 71, ¶ 19, 830 N.W.2d 571.

[¶ 19] The district court's decision described Sandra Hoverson's interference with Carl Hoverson's parenting time in

detail, and we will not repeat that description. Evidence supports the court's findings about her interference with parenting time, and these findings are not clearly erroneous. In that context, the court appropriately ordered Carl Hoverson to prepare a parenting time schedule utilizing the framework for primary residential responsibility in the divorce judgment. The court also appropriately required that Carl Hoverson provide the schedule to the parenting coordinator for review and confirmation that the schedule complied with the judgment's provisions for primary residential responsibility and parenting time. The court's order specifically stated, "Review and confirmation of a schedule by the Parenting Coordinator shall be completed *without* input from Sandra [Hoverson]." The court's order explicitly refers to the parenting coordinator's review of Carl Hoverson's proposed calendar to ensure compliance with the court's prior award of parenting time to him. The court's decision requires the parenting coordinator to mechanically review the parenting time calendar prepared by Carl Hoverson for compliance with the court's prior order and is gauged to ensure compliance with the court's order for primary residential responsibility and parenting time. The court's decision is authorized by N.D.C.C. §§ 14–09.2–01 and 14–09.2–04 and is warranted by the record of Sandra Hoverson's interference with Carl Hoverson's parenting time.

[¶ 20] We further conclude the district court's decision did not improperly expand the authority of the parenting coordinator. The court's language about decision making states "[i]n the event of a dispute regarding a major decision, the Parenting Coordinator shall make the decision." As we explained in *Dieterle*, 2013 ND 71, ¶ 19, 830 N.W.2d 571, a parenting coordinator may not make substantive changes to a court's order, but a parenting coordinator may resolve disputes between parties so long as access to the court is allowed for ultimate resolution of the dispute. Sandra Hoverson has not demonstrated that the parenting coordinator has made any decisions substantively changing the divorce judgment, and N.D.C.C. § 14–09.2–01(3) authorizes a parenting coordinator to make decisions resolving parenting time disputes. On this record about the parties' exercise of parenting time, the court's order did not improperly expand the authority of the parenting coordinator and complies with *Dieterle*, N.D.C.C. §§ 14–09.2–01 and 14–09.2–04, and N.D.R.Ct. 8.11.

[¶ 21] Sandra Hoverson argues the district court clearly erred in denying her motion to modify parenting time. She argues Carl Hoverson's work schedule required him to use a daycare provider when she was available to care for the child and she should have been allowed to take care of the child when he was working or on business trips.

[¶ 22] The district court modified the parties' parenting time after making findings about the parties' conflict and lack of agreement in implementing Carl Hoverson's parenting time. We recognize conflict may be a change in circumstances warranting modification of parenting time. *Dufner*, 2010 ND 31, ¶¶ 9–10, 778 N.W.2d 586. We decline to reweigh the evidence about the best interests of the child. We are not left with a definite and firm conviction the court made a mistake in finding a material change in circumstances necessitating modification of Carl Hoverson's parenting time in the best interests of the child. The court did not clearly err in modifying parenting time.

## IV

[¶ 23] Sandra Hoverson argues the district court abused its discretion in ordering

her to pay Carl Hoverson's attorney fees. She argues her motions and conduct were meritorious and the court's order has a chilling effect because it punishes her for exercising her legal rights. Carl Hoverson responds the attorney fees awarded him in the post-judgment motion have been satisfied and the issue is not properly before this Court. He also argues the district court properly awarded him attorney fees for responding to Sandra Hoverson's motion for parenting time and her motion to modify spousal support because both motions unreasonably increased the time spent on the case.

[¶ 24] The amended judgment reflects Sandra Hoverson has satisfied the court's award of attorney fees to Carl Hoverson. Satisfaction of a judgment extinguishes the claim and the judgment no longer exists. *See Mr. G's Turtle Mountain Lodge, Inc. v. Roland Twp.,* 2002 ND 140, ¶ 9, 651 N.W.2d 625 (noting when judgment is satisfied there is nothing for an appellate court to review); *Nodak Mut. Ins. Co. v. Stegman,* 2002 ND 113, ¶ 7, 647 N.W.2d 133 (same); *Lyon v. Ford Motor Co.,* 2000 ND 12, ¶¶ 10–13, 604 N.W.2d 453 (same). "We will dismiss an appeal if the issues become moot or academic and no actual controversy is left to be determined." *Schwab v. Zajac,* 2012 ND 239, ¶ 8, 823 N.W.2d 737 (quoting *Ramsey Fin. Corp. v. Haugland,* 2006 ND 167, ¶ 8, 719 N.W.2d 346). In *Schwab,* we explained:

> " '[A] party who voluntarily pays a judgment against him waives the right to appeal from the judgment.' . . . '[W]hether a judgment has been voluntarily paid depends upon the facts and circumstances of each particular case, and the party seeking dismissal of the appeal bears the burden of showing the judgment was paid voluntarily.' 'A showing that the judgment has been

paid, however, creates a presumption that the payment was voluntary.' "

2012 ND 239, ¶ 8, 823 N.W.2d 737 (citations omitted).

[¶ 25] The district court ordered Sandra Hoverson to pay Carl Hoverson's attorney fees for responding to her motions, and she subsequently paid those fees, which were denoted as satisfied in the amended judgment. This record does not reflect any attempt by Sandra Hoverson to post a bond pending appeal, and she does not dispute the statement in the amended judgment that the attorney fees have been paid. *See Lyon,* 2000 ND 12, ¶ 12, 604 N.W.2d 453 (describing existing avenues for judgment debtors to protect themselves from judgment collection efforts pending appeal). Because Sandra Hoverson voluntarily paid the award of attorney fees to Carl Hoverson, she waived that issue on appeal.

V

[¶ 26] We affirm the amended judgment.

[¶ 27] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.