2003 ND 145

**Laurie Lee ORVEDAL, Plaintiff and Appellee,**

v.

**Jeffrey Ray ORVEDAL, Defendant and Appellant.**

No. 20030043.

Supreme Court of North Dakota.

Sept. 23, 2003.

Patti J. Jensen, Galstad, Jensen & McCann, PA, East Grand Forks, MN, for plaintiff and appellee.

James D. Hovey, Pearson Christensen, Grand Forks, for defendant and appellant.

MARING, Justice.

[¶ 1]   Jeffrey Orvedal appealed from an amended divorce judgment clarifying the visitation provisions in the original decree and modifying Jeffrey's support obligation. We hold the court did not err in clarifying the visitation provisions and the visitation schedule specified by the court is not clearly erroneous.   We further conclude the court's calculation of Jeffrey's child support obligation is in accordance with the child support guidelines and is not clearly erroneous.   We affirm and remand for the trial court to consider Laurie Orvedal's request for attorney fees on appeal.

I

[¶ 2]   Jeffrey and Laurie Orvedal were married in August 1985, and they were divorced in March 1999.   The divorce decree awarded them joint physical custody of their son, born September 23, 1988, with the following specific provisions:

Laurie and Jeff shall have joint physical custody . . . as follows:

(a) [The child] shall reside with Laurie during the school year, with liberal visitation by Jeff as agreed to between the parties.

(b) [The child] shall reside with Jeff during the summer break, with liberal visitation by Laurie as agreed to between the parties.

Until November 2001, the parties' son had visitation with his father during the school year almost every weekend.   Laurie then notified Jeffrey she would allow their son to have only two weekend visitations per

month with Jeffrey during the school year. Jeffrey filed a motion asking the trial court to enforce the divorce decree. Laurie subsequently filed a motion requesting the court to modify custody but later withdrew that motion. After a hearing, the court determined the visitation provisions were ambiguous, and it clarified the original decree. Relevant to this appeal, the court specifically set the visitation schedule to give Jeffrey two weekend visitations per month during the school year and an additional eight-hour visitation during one of the remaining Saturdays per month. Upon Laurie's request, the court also modified Jeffrey's child support obligation, and Jeffrey appealed.

## II

[¶ 3] Jeffrey asserts the trial court erred in modifying the visitation provisions without first finding there was a substantial change of circumstances warranting a modification.

■■■ [¶ 4] However, the trial court decided to clarify rather than modify the original visitation provisions. When a judgment is vague, uncertain, or ambiguous, the court may clarify the judgment. *Anderson v. Anderson,* 522 N.W.2d 476, 478 (N.D.1994). When a divorce decree fails to specify some particulars and uncertainties in the decree arise from subsequent events, clarification of the decree is often appropriate. *Kostelecky v. Kostelecky,* 537 N.W.2d 551, 554 (N.D.1995). The trial court concluded the original judgment was ambiguous with regard to the visitation order. The court clarified the intent of the judgment and, in accordance with the clarification, specified a structured visitation schedule. The court made the following relevant findings and conclusions:

In considering the language of the divorce judgment relating to physical custody of [the child], I conclude a part of it is ambiguous. It provides for joint physical custody of [the child]. The judgment then proceeds to describe the implementation of that joint physical custody of [the child]. It provides for an alternating arrangement for physical custody. That is not ambiguous. However, it provides for, "liberal visitation ... as agreed to between the parties". From this phrasing Jeff maintains that it meant that that agreement was to infer that the current pattern of visitation at the time of the divorce was to be the defined agreement for visitation, whereas Laurie maintains that this phrase meant as agreed upon from time to time. This constitutes an ambiguity that requires clarification by this court.

. . . .

[I]t is this court's determination that the phrase "as agreed to between the parties" contained in both locations in paragraph 3 of the judgment did not infer or otherwise mandate then or now an "every weekend" scenario as Jeff maintains . . . . [I]t was never this court's recognition or understanding in accepting this stipulation that the phrase "as agreed upon between the parties" was subject or otherwise limited to a locked in term or frequency of visitation as Jeff now suggests. Based upon all of the above, this court concludes that the phrase "as agreed to between the parties" was to be left for the parties to address from time to time as the circumstances changed, as did the best interest of [the child].

. . . .

Jeff is entitled to liberal visitation within the parameters of that visitation also being reasonable and in [the child's best] interests. It is however obvious and this court finds that the parties are unable to agree upon what should be the

appropriate schedule of visitation while [the child] resides with his mother during the school term, and when [the child] resides with his father during the summer break. Consequently, this court for reasons set forth below concludes and finds that the following visitation schedule at least in the near future and current circumstances serves the best interests of [the child] while at the same time providing for liberal, yet reasonable visitation for the parties when the other party has custody.

The visitation schedule is very detailed, but in essence, the court structured the order to give Jeffrey visitation of two weekends per month with his son during the school year and one eight-hour visitation on one other Saturday per month.

[¶ 5] In *Greenwood v. Greenwood,* 1999 ND 126, ¶ 8, 596 N.W.2d 317, we explained our standard for reviewing a lower court's clarification of a prior judgment:

"Interpretation of a judgment is a question of law, and an unambiguous judgment may not be modified, enlarged, restricted, or diminished." "[T]he question whether a judgment is ambiguous is a question of law." "There is an ambiguity when language can be reasonably construed as having at least two alternative meanings." "If the same trial judge clarifies an original judgment, we afford the judge's clarification considerable deference."

(Citations omitted.)

[¶ 6] We agree with the trial court that the visitation provisions were ambiguous and subject to clarification by the court. The trial judge who clarified the original judgment was the same judge who entered that judgment in the original divorce proceedings. Because the same judge who entered the original judgment also clarified it, we afford the clarification considerable deference. *Anderson,* 522 N.W.2d at 478. The original judgment provided that while the child resided with his mother during the school year the father would receive "liberal visitation." Initially, the parties were able to agree on a liberal visitation schedule, but with the passage of time they were unable to agree what constituted liberal visitation. Conflict over visitation can pose harm to the emotional welfare of a child caught in the middle. *Reinecke v. Griffeth,* 533 N.W.2d 695, 699 (N.D.1995). Consequently, the court found it necessary to clarify the judgment and to provide a more structured visitation schedule which, in the court's view, fulfilled the liberal visitation requirement.

[¶ 7] Jeffrey asserts the trial court erred in "modifying" the visitation provisions without first finding there was substantial change of circumstances warranting a modification. A party moving to modify visitation bears the burden of establishing that a significant change of circumstances has occurred since the prior visitation order and that it is in the best interests of the child to modify the order. *Reinecke,* 533 N.W.2d at 698.

[¶ 8] In this case, the trial court made a specific finding that there was not a change of circumstances, and the court clarified, rather than modified, the decree. Under the circumstances, we conclude the trial court's finding that there was not a change in circumstances is clearly erroneous. N.D.R.Civ.P. 52(a). The original decree provided for liberal visitation with the noncustodial parent "as agreed to between the parties." In view of that language, we conclude, as a matter of law, that when the parties ultimately became unable to agree as to what constituted liberal visitation there was a substantial change of circumstances for purposes of modifying the visitation provisions. Nevertheless, the trial

court's erroneous finding did not result in reversible error, because the court reached the same result (*i.e.* a structured visitation schedule) in clarifying the visitation provisions as it would had the court found a substantial change of circumstances upon which to modify and structure the decree.

[¶ 9]   When the parties cannot cooperate in arranging visitation, we have recommended that the court enter a structured visitation schedule. *Reinecke*, 533 N.W.2d at 699.   We conclude the court correctly construed the visitation order for liberal visitation "as agreed to between the parties" as one which was fluid, not static, allowing adjustments in visitation to accommodate the circumstances.   The structured schedule clarifies the court's intentions of providing liberal visitation for each party when the other has custody of the child.   We conclude the trial court did not err in setting a structured visitation schedule for the parties.

### III

■■   [¶ 10]   Jeffrey asserts the trial court erred in imputing income to him for purposes of computing his child support obligation.   Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. *Hilgers v. Hilgers*, 2002 ND 173, ¶ 18, 653 N.W.2d 79.   Section 14–09–09.7, N.D.C.C., mandates the Department of Human Services to establish child support guidelines and creates a rebuttable presumption that the amount of support designated in the guidelines is cor-

rect.   A proper finding of net income is essential to determine the correct amount of child support under the child support guidelines. *Dufner v. Dufner*, 2002 ND 47, ¶ 24, 640 N.W.2d 694.

[¶ 11]   When a child support obligor is unemployed or underemployed, the court is permitted under the guidelines to impute income to the obligor.   N.D. Admin. Code § 75–02–04.1–07.   In this case, the trial court made very detailed findings as to its rationale for imputing income to Jeffrey:

> Based upon his current income Jeffrey is underemployed as defined by N.D.A.C. 75–02–04.1–07(1)(b).   That is, his current gross income from earnings is significantly less than the prevailing amounts earned in the community by persons with similar work history and occupational qualifications.   Jeffrey is a mechanical engineer by education and occupation . . . .
>
> Under N.D.A.C. 75–02–04.1–07 Jeffrey as the obligor is presumed to be underemployed because his current gross income of $28,800.00 is less than six-tenths of the prevailing amounts earned in the "community" by persons with similar work history and occupational qualifications, and as "community" is defined at N.D.A.C. 75–02–04.1–07(1)(a).

[¶ 12]   In determining that Jeffrey was earning significantly less than the prevailing wages of someone with his work history and occupational qualifications, the trial court took judicial notice of a Job Service North Dakota publication on prevailing wages.   This Court has recognized that publications by Job Service North Dakota can be judicially noticed to show prevailing wages in a community.[1] *See Berg v. Ull-*

---

1.   We note that the trial court apparently took judicial notice of this publication after the evidentiary hearing had been held.   The better practice, and one which would afford the parties a more complete opportunity to refute or otherwise comment upon the judicially recognized publication, would be for the trial court to take judicial notice of it prior to or

*man,* 1998 ND 74, ¶ 16, 576 N.W.2d 218. Jeffrey asserts the trial court erred in imputing income to him without considering that employment opportunities were not available to him in the community. Regarding this issue, the trial court also made detailed findings:

> Having determined that Jeffrey is underemployed, the North Dakota Child Support Guidelines generally require that for calculating monthly gross income, N.D.A.C. 75–02–04.1–07(3) be applied to determine that amount. Jeffrey, however, maintains that N.D.A.C. 75–02–04.1–07(6) should instead be considered and applied. That section provides that:
>
> 6. If an unemployed or underemployed obligor shows that employment opportunities, which would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable in the community, income must be imputed based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings.
>
> By the language of this guideline, the burden was on Jeffrey to establish these circumstances. . . .
>
> The court finds that Jeffrey has failed to present sufficient evidence to warrant a finding that amounts determined under subdivision b or c of subsection 3 are unavailable in the community. Jeffrey has offered unrefuted testimony that he has had three job applications considered in Grand Forks at Cirrus Design, LM Glass and Fiber, and Imination. He has testified that he has sent out 50 resumes for work. He has testified that

job opportunities in the "Grand Forks area" for mechanical engineers are "extremely poor". However, it was Jeffrey's obligation to pursue job opportunities within that geographical area defined as the community, that is, within a 100 mile radius of Grand Forks. It was not just limited to the Grand Forks area. Consequently, the evidence is absent in terms of what job opportunities might be available in the Fargo/Moorhead area, Devils Lake, or Crookston, which are three business areas within the 100 mile radius that could support employment opportunities for mechanical engineers. Further, there are at least some employment opportunities even by Jeffrey's acknowledgment in that he had three applications considered just in Grand Forks. Without any offer of evidence to explain why he was unable to acquire employment from those opportunities, the fact that he was not hired does not necessarily mean that employment opportunities are unavailable. Under all of these circumstances and the evidence presented this court cannot find that Jeffrey has met his burden to have subsection 6 applied to the calculation of monthly gross income.

■ [¶ 13] The trial court found that Jeffrey had failed to meet his burden of showing that he had a lessened income potential in his field of mechanical engineering because there were not available employment opportunities in the community. This Court has recognized that it is not evidence of lack of good faith to find employment when a custodial parent fails to seek jobs that would involve a daily commute outside the community where the parent and children reside. *Goff v. Goff,* 1999 ND 95, ¶ 12, 593 N.W.2d 768. Never-

---

during the evidentiary proceedings. Jeffrey does not claim the trial court committed error in its procedure for taking judicial notice of

the publication and, therefore, we do not further address this issue.

theless, there was evidence in this record of available jobs in the Grand Forks and surrounding area but that Jeffrey, without further explanation on his part, had simply been unable, at the time of the hearing, to secure a position in the area. The trial court found there were employment opportunities in the community and, consequently, the evidence did not require the court to impute a lesser income to Jeffrey under subsection (6) of N.D. Admin. Code § 75–02–04.1–07. We conclude the evidence supports the trial court's findings and they are not clearly erroneous.

 [¶ 14] In applying the guidelines, the court determined Jeffrey's child support obligation is $749 per month. The court then made a downward adjustment of this obligation in consideration of Jeffrey's extended visitation. The court also temporarily reduced the support obligation because Jeffrey was not currently employed. It is appropriate to delay a portion of the support obligation when the obligor's income is temporarily reduced. *Minar v. Minar*, 2001 ND 74, ¶ 36, 625 N.W.2d 518. We conclude the trial court appropriately applied the child support guidelines and did not err in determining Jeffrey's child support obligation.

### IV

[¶ 15] Laurie has requested attorney fees on appeal and, in recognition of this Court's preference to have the trial court make the initial determination on that issue, has asked that we remand the case to the trial court for consideration. We prefer the trial court to make an initial determination of an award of attorney fees on appeal. *Myers v. Myers*, 1999 ND 194, ¶ 14, 601 N.W.2d 264. The trial court is in the better position to consider special factors relating to the financial status of the parties and the need for and ability to pay attorney fees. *Id.* We, therefore, remand this case to the district court for determination of Laurie's request for attorneys fees on appeal.

[¶ 16] The judgment is affirmed and the case remanded.

[¶ 17] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.