2008 ND 55

**Katherine Marie YOUNG, Plaintiff and Appellee,**

v.

**James Charles YOUNG, Defendant and Appellant.**

**No. 20070293.**

Supreme Court of North Dakota.

March 20, 2008.

Rehearing Denied April 17, 2008.

Melinda Hanson Weerts, Fargo, ND, for plaintiff and appellee.

James Charles Young, pro se, Moorhead, MN, defendant and appellant.

CROTHERS, Justice.

[¶ 1] James Young appeals the district court's order amending his visitation rights with his minor daughter. Young disputes several of the district court's factual findings, argues the new visitation schedule is not in his daughter's best interests and claims the schedule change is not supported by sufficient evidence. We affirm because the district court's finding of a material change in circumstances and other findings of fact are not clearly erroneous.

I

[¶ 2] Katherine and James Young were divorced in 2002. Katherine and James received joint legal custody of their daughter, with Katherine receiving physical custody and James receiving visitation. The original visitation schedule included alternate weekends from Friday at 6:30 p.m. until Sunday at 5:00 p.m., Father's Day and alternate major holidays plus two uninterrupted weeks each summer. On February 2, 2005, James filed a motion requesting full custody. Rather than a change of custody, James received expanded visitation, including the previously listed holidays, alternate weekends from Friday at 4:00 p.m. (or after school) until Sunday at 7:00 p.m., Wednesdays from 4:00 p.m. (or after school) until 7:00 p.m. and six weeks each summer subject to Katherine having alternate weekend and Wednesday visitation. Exchanges were to occur at Rainbow Bridge Safe Exchange/Visitation Center. As part of the order, Katherine was found in contempt of court for failing to follow the visitation schedule over the Christmas holidays.

[¶ 3] Katherine moved to amend visitation on August 7, 2007, requesting a change in exchange times to accommodate her work schedule. Katherine's work schedule had not actually changed; Katherine, a day care provider, had been relying on someone else to make the exchange on her behalf, and that person was no longer available. Katherine claims it is difficult to appear at the designated exchange time because of her work commitments and because she is unable to find anyone to transport her child to and from the exchange location. According to Katherine, court intervention is required because James refuses to cooperate due to his mental health issues. Katherine also requested James' six weeks of visitation in the summer be modified so each parent would alternate two-week periods. Katherine claimed her daughter had a hard time adjusting to spending so much uninterrupted time away from Katherine. James argued Katherine's scheduling problem was illusory because their daughter was picked up directly from school. James also alleged other children at Katherine's house may be affecting their daughter's moods.

[¶ 4] The district court found Katherine's failure to find someone to pick up

her daughter and her daughter's behavior problems to be a material change in circumstances. The exchange time was changed from 4:00 p.m. to 6:00 p.m., regardless of the school schedule, and James' summer visitation was changed to two-week alternating increments.

## II

[¶ 5] James appeals the district court's order alleging, first, that the district court erred in its determination of facts by ignoring problems caused by the new schedule, Katherine's psychological problems, Katherine's contradictory arguments and lack of credibility, and by amplifying their daughter's behavior problems. Second, James alleges there was not a sufficient change in circumstances requiring a change of visitation.

[¶ 6] "A district court's decision to modify visitation is a finding of fact, which will not be reversed unless clearly erroneous." *Hanson v. Hanson,* 2005 ND 82, ¶ 20, 695 N.W.2d 205. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support the finding, on the entire evidence, we are left with a definite and firm conviction a mistake has been made." *Kienzle v. Selensky,* 2007 ND 167, ¶ 14, 740 N.W.2d 393. This Court "do[es] not reweigh evidence or reassess witness credibility when the evidence supports the [district] court's findings." *Id.*

### A

[¶ 7] James claims the district court overlooked the evidence he presented and relied too heavily on Katherine's evidence. James indicates four instances where his evidence was incorrectly disfavored.

[¶ 8] First, James claims the scheduling problem found by the district court did not exist because he ordinarily picked his daughter up from school, eliminating the need for Katherine to provide transportation. Furthermore, the district court's revised visitation schedule creates problems because it limits James' Wednesday-night visitation to two hours, causing his visits with his daughter to be harried and interfering with his daughter's bedtime. James also argues the exchange time was needlessly changed on Sundays, when Katherine's work schedule is not a factor. Katherine's affidavit to the district court, however, expressed that the 4:00 p.m. exchange time interfered with her work schedule and that she attempted to resolve the scheduling problem with James informally. According to Katherine, the attempts at resolution were futile because James refused to cooperate.

[¶ 9] Second, the district court changed the summer visitation to alternating two-week intervals between parents rather than a single six-week period with James. The district court based this change on the child's "act[ing] out" and "mouthy" behavior exhibited when she returns to Katherine's home from a visit with James. James argues the district court failed to consider that the child has not had any behavioral incidents in five months. James argues the district court also failed to consider the difficulties she has in getting along with other children at Katherine's home, which James believes is the cause of his daughter's problems. Katherine's affidavit states the behavioral incidents occurred "in the recent past" and her daughter's counselor suggested the child's problems may have originated from the lengthy summer visitation away from Katherine.

[¶ 10] Third, James challenges the district court's evaluation of Katherine's credibility. According to James, Katherine's affidavit and arguments to the district court, including statements about her work

schedule, statements about the child's behavior, statements about interactions with the child's counselor and statements about James have been proven false by his evidence. Furthermore, James claims the district court did not assign enough weight to Katherine's performance on a psychological evaluation, in which she tended to, according to the psychologist, "smooth over her faults and weaknesses" and "approach[ ] the evaluation with a mixture of openness and guardedness." The psychologist stated the test results may minimize the degree and extent of her psychological problems. James argues Katherine's lack of candor with the psychologist is indicative of the dishonesty she exhibited throughout these proceedings.

[¶ 11] Last, James contends Katherine's affidavit misrepresents statements made by the child's counselor. James entered into evidence a letter from his daughter's therapist which he construes as contradicting Katherine's representation of the counselor's statements.

[¶ 12] While we are particularly troubled by the reduction of James' Wednesday visitation, each of his four arguments requires this Court to revisit either the district court's factual determinations or its assessment of Katherine's credibility. This Court may not reweigh evidence or reassess credibility when evidence exists to support the district court's findings. *Kienzle*, 2007 ND 167, ¶ 14, 740 N.W.2d 393. "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." N.D.R.Civ.P. 52(a). Katherine's affidavit, though contested, provides such evidence. Furthermore, the psychologist's evaluations of both parents and the court documents from all proceedings following the divorce were available for the district court's review. That evidence provides a factual basis for the district court's findings, and

we are not "left with a definite and firm conviction a mistake has been made." *Kienzle*, at ¶ 14.

## B

[¶ 13] James argues the district court lacked the authority to change the visitation order because there was not a requisite change in material circumstances. In order to modify visitation, the moving party must establish a "material change of circumstances has occurred since the prior visitation order and it is in the best interests of the child to modify the order." *Ibach v. Zacher*, 2006 ND 244, ¶ 8, 724 N.W.2d 165. A "material change in circumstances" sufficient to amend a visitation order is similar to, but is distinct from, a "material change in circumstances" sufficient to change custody. *See Helfenstein v. Schutt*, 2007 ND 106, ¶ 17, 735 N.W.2d 410. "[M]odification of a visitation decision is governed by the standard set forth in our case law." *Id.* at ¶ 16.

[¶ 14] A material change in circumstances is defined as "important new facts that were unknown at the time of the initial custody decree." *Helfenstein*, at ¶ 18; *see Ibach*, at ¶ 10 (mother's out-of-town move and father's illness a sufficient material change); *Simburger v. Simburger*, 2005 ND 139, ¶ 18, 701 N.W.2d 880 (mother's agreeing to unsupervised visitation with father followed by mother's unwillingness to allow unsupervised visitation a material change); *Reinecke v. Griffeth*, 533 N.W.2d 695, 698–99 (N.D.1995) (son's Attention Deficit Disorder diagnosis coupled with the visitation's interference with son's school work is an "implied material change" of circumstances). A change in a parent's work schedule may also be a change of circumstances material to visitation and has been recognized in other jurisdictions. *See Grange v. Grange*, 15 Neb.App. 297, 725 N.W.2d 853, 860 (2006)

(a significant change in a party's work schedule may suffice to reopen the subject of visitation); *Ahrens v. Conley,* 5 Neb. App. 689, 563 N.W.2d 370, 372–73 (1997) (change in work schedule, the child's increased age and child's preference to spend more time with parent collectively suffice as a material change of circumstances for visitation).

■ [¶ 15] Here, the district court found Katherine's scheduling problems together with the child's recent behavior to be a material change of circumstances sufficient to modify the visitation order. This Court notes that Katherine's work schedule did not change; rather, Katherine appears to be maintaining a schedule she has had for some time. The essential change, instead, appears to be Katherine's loss of assistance from another individual who previously transported the child to the exchange location and Katherine's failure to find an alternative solution. Even when combined with the child's recent behavior problems, this change presents a close case to justify a reduction in James' parenting time. However, we cannot say the district court's finding of a material change was clearly erroneous, and we do not reexamine the district court's factual determinations if evidence exists to support its findings. *See Corbett v. Corbett,* 2001 ND 113, ¶ 9, 628 N.W.2d 312.

### III

[¶ 16] We affirm the district court's order because the finding of a material change in circumstances and other findings of fact are not clearly erroneous.

[¶ 17] DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

VANDEWALLE, Chief Justice, concurring and dissenting.

[¶ 18] The record in this case reveals that Katherine Young was no longer able to deliver the child to a place of neutral exchange at 4:00 p.m., on Wednesdays, as had been agreed upon by the parties, because "[h]istorically, Katherine was able to find someone, primarily her significant other, to bring Maria to Rainbow Bridge at 4:00 p.m., but that situation changed when he located other employment." The trial court found this to be a change in circumstances that justified the modification of the judgment in order to begin visitation each Wednesday at 6:00 p.m. rather than 4:00 p.m. However, the record also reveals that, by agreement of the parties, on those Wednesdays on which the child was in school, James Young picked the child up at school. Because he is no longer allowed visitation until 6:00 p.m. he is no longer able to pick the child up at school and his visitation has been shortened by two hours each Wednesday.

[¶ 19] The reason for the modification is James Young's insistence on the child being delivered to the neutral place of exchange by 4:00 p.m. even though Katherine Young, who operates a daycare, was not able to do so on some of those Wednesdays on which the child was not in school. I take no issue with that decision. However, on those Wednesdays on which the child is in school, I would modify the judgment to allow James Young to continue to pick the child up at school as he had in the past. During the summer when the child is not in school and on those Wednesdays on which the child is ill or for other reasons is not in school, the visitation time would begin at 6:00 p.m. rather than 4:00 p.m. Presumably there would be few of those Wednesdays during the school year. To not allow James Young to continue to pick up the child at school on those Wed-

nesdays when she is in school seems to be a punishment for his intransigence rather than a decision furthering the best interests of the child.

[¶ 20] GERALD W. VANDEWALLE, C.J., and DALE V. SANDSTROM, J., concur.