2015 ND 254

Jennifer L. CAPES, n/k/a Jennifer L. Novak, Plaintiff and Appellee

v.

Jason CAPES, Defendant and Appellant.

No. 20140342.

Supreme Court of North Dakota.

Oct. 14, 2015.

Kari R. Winning, Grand Forks, N.D., for plaintiff and appellee.

Kristi P. Venhuizen, Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]  Six months after the divorce judgment giving Jason Capes primary residen-

tial responsibility, Jennifer Capes, now known as Jennifer Novak, filed for substantial changes in parenting time and decision-making authority, which were granted by a different judge. Capes appeals from the amended divorce judgment. Because we conclude the district court's finding that a material change in circumstances had occurred since entry of the divorce judgment was clearly erroneous, we reverse the amended judgment and remand to the court for entry of an amended judgment incorporating the parties' July 2014 stipulation into the original May 2013 judgment.

## I

[¶ 2] Capes and Novak were married in 2003 and have two children, born in 2008 and 2010. In May 2013, the parties were divorced in a judgment that awarded Capes primary residential responsibility and adopted his proposed parenting plan. The district court appears to have awarded primary residential responsibility to Capes primarily because it found he would provide greater stability and because of the criminal and related history of the man Novak was living with, who is now her husband.

[¶ 3] Only six months later, in November 2013, Novak moved the district court to modify the parenting plan on the basis of an alleged material change in circumstances because Capes changed the daycare provider without consulting with her, he would not "coparent," he would not always agree to letting her have the children more often than provided in the judgment, and they bickered primarily through texting. Although the divorce judgment provided any dispute would first be submitted to mediation, Novak filed her motion without doing so. She asked the court to grant her a right of first refusal to parent the children when Capes is unable,

to require the children to attend a licensed daycare facility, to modify the holiday parenting time schedule, to allow parenting time with both children on a child's birthday, and to appoint a parenting coordinator. Capes opposed the motion, arguing a change in material circumstances had not occurred and modification was not in the children's best interests.

[¶ 4] The trial judge had retired, and a different judge was assigned to hear the motion. In May 2014, the district court held an evidentiary hearing on Novak's motion. In July 2014, Capes and Novak entered into a partial stipulation to amend the judgment, providing the parties a right of first refusal when one parent intends to place the children in the care of a third party overnight, providing Novak additional parenting time when Capes is out of town coaching sporting events, permitting Novak to have lunch with the children while at daycare, revising the holiday schedule, and clarifying parenting time on the children's birthdays. The court subsequently granted Novak's motion to amend, and further amended the judgment to provide Novak extended weekends, overnight midweek visits, extended summer parenting time, and joint decision-making authority, and required the parties to use a parenting coordinator.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

## II

[¶ 6] Under N.D.C.C. § 14-05-22, the district court has continuing jurisdiction to modify parenting time. *See Hoverson v. Hoverson*, 2015 ND 38, ¶ 12, 859 N.W.2d 390; *Prchal v. Prchal*, 2011 ND 62, ¶ 10, 795 N.W.2d 693. "To modify

[parenting time], the moving party must demonstrate a material change in circumstances has occurred since entry of the previous [parenting time] order and that the modification is in the best interests of the child." *Prchal*, at ¶ 11 (quoting *Dufner v. Trottier*, 2010 ND 31, ¶ 6, 778 N.W.2d 586). The district court's decision to modify parenting time is a finding of fact, which this Court will not reverse on appeal unless clearly erroneous. *Hoverson*, at ¶ 12; *Prchal*, at ¶ 11. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court is left with a definite and firm conviction a mistake has been made. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113.

[¶ 7] This Court has discussed facts showing a material change in circumstances and the children's best interests sufficient to modify parenting time:

"To modify parenting time, 'a material change of circumstances occurs when important new facts arise that were unknown at the time of the initial [parenting time] order.' *Dufner*, 2010 ND 31, ¶ 7, 778 N.W.2d 586 (citing *Helfenstein [v. Schutt]*, 2007 ND 106, ¶ 18, 735 N.W.2d 410). *See also Young v. Young*, 2008 ND 55, ¶¶ 14–15, 746 N.W.2d 153 (mother's scheduling problems, together with the child's recent behavior, constituted sufficient material change in circumstances) (citing *Ibach v. Zacher*, 2006 ND 244, ¶ 10, 724 N.W.2d 165 (mother's out-of-town move and father's illness a sufficient material change); *Simburger v. Simburger*, 2005 ND 139, ¶ 18, 701 N.W.2d 880 (mother's agreement for unsupervised visitation with father followed by mother's unwillingness to allow unsupervised visitation constituted a material change); *Reinecke v. Griffeth*, 533 N.W.2d 695, 698–99 (N.D. 1995) (son's attention deficit disorder diagnosis coupled with the visitation's interference with son's school work is an implied material change)).

"Our decisions also provide the standard to determine whether a modification is in a child's 'best interests' based on the factual circumstances of each case. *See Dufner*, 2010 ND 31, ¶¶ 9–10, 778 N.W.2d 586 (affirming visitation modification where court found children were frustrated with incessant bickering between parents and stating '[c]ontinually exposing a child to adult conflict is not in that child's best interests'); *Reinecke*, 533 N.W.2d at 698–99 (holding modification was in the children's best interests where original visitation order interfered with their weeknight routine, contributing to behavior problems at home, poor performance at school and causing conflict between the parents)."

*Hoverson*, 2015 ND 38, ¶ 13, 859 N.W.2d 390 (quoting *Prchal*, 2011 ND 62, ¶¶ 12–13, 795 N.W.2d 693).

[¶ 8] Capes argues the district court erred in finding that a material change in circumstances had occurred since entry of the previous parenting time order.

[¶ 9] Regarding the change of the children's daycare, Capes notes he was awarded primary residential responsibility and pays for daycare. He contends that where the children attend daycare is not a "[m]ajor decision[ ] such as education, health care, and spiritual development" so as to require consultation. He says his decision did not affect Novak's parenting time, and he changed daycare providers because the children were not being properly supervised, the provider was not communicating with him, and the provider was often canceling care for personal reasons. Although the district court treated the change in daycare provider as a major

decision, neither Novak nor the court cite any authority that choosing a daycare provider is a major decision requiring input from both parties. The record does reflect that the parties consulted relative to the children's spiritual development, but that Novak subsequently changed her mind.

[¶ 10] This Court has said that in cases of parenting-time disputes, a more structured judgment may be appropriate. *See Seibold v. Leverington,* 2013 ND 173, ¶ 21, 837 N.W.2d 342 (In case of an inability "to resolve these parties' potential disputes under the plan, either party may move the court to enter and clarify a parenting plan."); *Orvedal v. Orvedal,* 2003 ND 145, ¶ 9, 669 N.W.2d 89 ("When the parties cannot cooperate in arranging visitation, we have recommended that the court enter a structured visitation schedule. *Reinecke [v. Griffeth ],* 533 N.W.2d [695,] 699 [ (N.D. 1995) ]."). Here the complaint focuses on Capes' adhering to the judgment and not being flexible enough to always allow Novak additional parenting time not provided for in the judgment. Novak cannot point to any denial of the parenting time specified in the judgment.

[¶ 11] Although Capes concedes the parties continue to have problems communicating, he says the parties are not "openly" hostile to each other, and no evidence shows the children have observed their parents' conflicts and inability to communicate, nor have they been negatively impacted by the hostility. Capes also says there is no evidence he alienated the children's affection from Novak. Regarding the district court's findings on his alleged rigidity and inflexibility with regard to parenting time, Capes again asserts no evidence shows that the children were affected or that he had violated the judgment's terms. Although there was electronic bickering between the parents, there is no evidence the children read any

of these communications. Although the children sometimes cried when leaving Novak, nothing connects that to the electronic bickering. Moreover, after the hearing in this case, Capes and Novak entered into a partial stipulation to amend the judgment to provide the parties a right of first refusal when one parent intends to place the children in the care of a third party overnight, providing Novak additional parenting time when Capes is out of town coaching sporting events, permitting Novak to have lunch with the children while at daycare, revising the holiday schedule, and clarifying parenting time on the children's birthdays, thus resolving at least some of the parenting time issues Novak had raised to the district court. Despite Capes' demonstrated willingness to compromise in an effort to reach an amicable resolution to Novak's motion, the district court still subsequently entered its order basing its finding of a material change in circumstances on Capes' purported "need to be rigid and in total control of the children's lives and schedules, disregarding any input from . . . Novak."

[¶ 12] The dissenting opinion says the district court found a material change in circumstances on the basis of evidence Capes was alienating the children from Novak. Although the court found Capes had engaged in "behaviors" aimed at discouraging Novak's relationship with the children and demonstrated an inability or unwillingness to facilitate or encourage a close relationship, the court did not find that Capes was alienating the children—attempting to turn the children away from Novak by "poisoning the well." As this Court has stated, "A parent does have a duty to not turn a child away from the other parent *by 'poisoning the well.'* Notwithstanding the perceived imperfections in the other parent, a custodial parent should, in the best interests of the chil-

dren, nurture the children's relationship with the noncustodial parent." *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D. 1995) (quoting *Johnson v. Schlotman*, 502 N.W.2d 831, 834 (N.D.1993) (emphasis added)). Here, there is no evidence that the children were, in fact, turning away from Novak or that Capes was poisoning the well. In its order, the court relied on specific examples in which Capes had demonstrated rigidity or a lack of flexibility in accommodating Novak's parenting time and requests for rescheduling parenting time. Rather than turning away from Novak, however, the evidence in the record shows the children did not want to leave their mother or go to their father. For example, there is evidence of an altercation between Capes and Novak's current husband, which led to Capes unsuccessfully seeking a disorderly conduct restraining order against him. At the restraining order hearing, Capes testified Novak's husband had said to him, "It must feel really good that your son doesn't want to go home with you." Novak's husband testified he had said, "How does it feel that your kid can't stand you." While evidence suggests Capes could do more to nurture the children's relationship with Novak, there is no evidence of Capes engaging in parental alienation to turn the children away from Novak, and there is evidence that might suggest efforts to alienate the children from Capes.

[¶ 13] Additionally, contrary to the dissenting opinion, there is no evidence that Capes' hostility has negatively affected the children. There is testimony, albeit very limited, regarding some negative impact and difficulties the children have had during the exchanges between Novak and Capes, particularly with one child, including having to pry him out of the house, carrying him kicking and screaming, and taking him to Capes. Novak testified at the hearing that the children's demeanor

changes when they know there will be a transition; one child becomes very anxious, and the children get upset at the end of Novak's parenting time. There is also evidence in the record that the children had witnessed the confrontation between Capes and Novak's husband. There is no testimony, however, that the children's difficulties are a result of the parents' conflict or hostility toward each other or that the children have been diagnosed with "separation anxiety," as found by the court. On the basis of our review of the record, we conclude no evidence supports the district court's finding that Capes' hostility has negatively impacted the children, and we are left with a definite and firm conviction a mistake has been made. We therefore conclude the district court's finding of a material change of circumstances to justify modifying parenting time is clearly erroneous.

■ [¶ 14] Moreover, completely lacking in the district court's analysis is any consideration of the best-interest factors under N.D.C.C. § 14–09–06.2 to justify significantly realigning and expanding Novak's parenting time. In modifying parenting time, "the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113. This Court also has said that "parenting time between a parent without primary residential responsibility and a child is presumed to be in the child's best interests and that it is not merely a privilege of the parent, but 'a right of the child.'" *Seibold v. Leverington*, 2013 ND 173, ¶ 19, 837 N.W.2d 342 (quoting *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896). In other words, the children's best interests are a foremost consideration.

[¶ 15] While Capes would be wise to heed the district court's admonition to bet-

ter accommodate Novak's parenting time, we conclude the district court's decision to modify parenting time under these facts and circumstances is clearly erroneous.

### III

[¶ 16] The amended judgment is reversed, and the case is remanded for entry of an amended judgment incorporating the parties' July 2014 stipulation into the original May 2013 divorce judgment.

[¶ 17] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

CROTHERS, Justice, dissenting.

[¶ 18] I respectfully dissent.

[¶ 19] I do not agree the district court's findings on material change of circumstances were clearly erroneous. Nor do I agree that the district court's findings on the best interest factors were inadequate for us to perform our appellate function.

### I

[¶ 20] A district court's decision to modify parenting time is a finding of fact, which this Court will not reverse on appeal unless clearly erroneous. Majority opinion at ¶ 6.

"The district court's decision to modify parenting time is a finding of fact, which this Court will not reverse on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court is left with a definite and firm conviction a mistake has been made."

*Id.* at ¶ 6 (citations omitted).

[¶ 21] Here, the majority attacks this dissent and reweighs the evidence on the way to concluding the district court's findings on material change of circumstances were wrong. Majority opinion at ¶¶ 12–13 ("[W]e are left with a definite and firm conviction a mistake has been made."); and at ¶ 15 ("While Capes would be wise to heed the district court's admonition to better accommodate Novak's parenting time, we conclude the district court's decision to modify parenting time under these facts and circumstances is clearly erroneous.").

[¶ 22] The district court found a material change in circumstances occurred since the judgment, based on the evidence presented at the hearing, that Capes was alienating the children from her. Alienation of a child's affections is a recognized basis for establishing a material change of circumstances. *Krueger v. Tran,* 2012 ND 227, ¶ 14, 822 N.W.2d 44 ("A material change in circumstances can exist when one parent attempts to alienate a child's affection for the other parent, when parents are openly hostile towards each other and that hostility negatively affects the child, or when the non-custodial parent's situation improves accompanied by a general decline in the child's condition with the other parent over the same time period.").

[¶ 23] The court found that Capes was openly hostile to Novak and that hostility is negatively impacting the children. The court also found Capes demonstrates a need to be rigid and in total control of the children's lives and schedules, and that he disregards any input from Novak. The court found this was demonstrated when Capes unilaterally fired the children's daycare provider and hired his sister to provide daycare for the children in his home, relying on his father to provide care when his sister is unavailable. The court found this represented a reduction in valuable parenting time and contact between Novak and her children, to the detriment of the children.

[¶ 24] The district court further found Capes engaged in other behaviors aimed at discouraging Novak's relationship with her children, and that Capes demonstrated an inability or unwillingness to facilitate and encourage a close relationship. In its order, the court listed specific examples in which Capes demonstrated rigidity and a lack of flexibility in accommodating Novak's parenting time and requests for rescheduling parenting time. Evidence also exists of an altercation between Capes and Novak's current husband, which led to Capes seeking a disorderly conduct restraining order against him. However, he was not granted a permanent restraining order because the court found Novak's husband's testimony more credible.

[¶ 25] Applying our clearly erroneous standard of review, evidence supports the district court's findings. Although a very close case, upon my own review of that evidence, I am not left with a definite and firm conviction a mistake was made.

## II

[¶ 26] The majority also concludes the district court failed to make any findings on the best-interest factors and states I am wrong to suggest otherwise. Majority opinion at ¶ 13 ("Additionally, contrary to the dissenting opinion, there is no evidence that Capes' hostility has negatively affected the children."). I again respectfully disagree.

[¶ 27] While sparse, the district court found Capes is openly hostile to Novak and the hostility is negatively impacting the children. The court found the children were having difficulty being away from their mother and struggled with being separated from Novak after her parenting time. The court found there was no reason for the children to have suffered this kind of "separation anxiety" and it was in the children's best interest that they be allowed more parenting time with Novak and that Capes' control of parenting time be limited. The court also found that since being awarded primary residential responsibility, Capes interfered with Novak's parenting time and, in an attempt to eliminate the behavior, the court granted Novak's motion to amend parenting time. The court cautioned Capes that continued interference with Novak's parenting time may result in Novak being awarded primary residential responsibility.

[¶ 28] The evidence shows Capes had an altercation with Novak's husband and the children witnessed it. There was testimony regarding the negative impact of the parenting time schedule on the children and the difficulties that the children are having as a result, including having to pry one child out of the house with Novak carrying him, kicking and screaming, and taking him to Capes. Novak testified that the children's demeanor change when they know there will be a transition, that one child becomes very anxious and that the children get upset at the end of Novak's parenting time.

[¶ 29] Based on this record, the district court's findings are minimally adequate and evidence supports the court's findings that the revised parenting time schedule is in the children's best interest. To the extent the findings are inadequate, a remand to the district court would be the appropriate result rather than this Court subsuming the fact-finding role and render our judgment in place of the district court.

[¶ 30] LISA FAIR McEVERS, J., concurs.

McEVERS, Justice, dissenting.

[¶ 31] I join Justice Crothers in his dissent. The original findings made in the underlying divorce showed many of the best interest factors as neutral or not fa-

voring either party. The district court in the original divorce action specifically found, under factor (e), "[b]oth parents are willing to facilitate and encourage a close and continuing relationship between the other parent and children."

[¶ 32] In its Order Granting the Motion to Amend the Judgment and Decree, the district court made specific findings that Jennifer Novak had met her burden to show a material change in circumstances: (1) that the evidence establishes that Jason Capes is openly hostile to Jennifer Novak and the hostility is negatively impacting the children; and (2) that Jason Capes had engaged in behaviors aimed at discouraging the relationship between Jennifer Novak and the children, demonstrating an inability or unwillingness of Jason Capes to facilitate and encourage a close relationship. Jason Capes' unwillingness to facilitate and encourage a close relationship between Jennifer Novak and the children involves important new facts that were unknown at the time of the initial parenting order. The district court made lengthy findings supporting its reasons for the modification, and I would not second guess the fact-finder who is in a better position to judge the credibility of the witnesses.

[¶ 33] The majority suggests the district court erred in its findings regarding daycare, indicating that the district court did not cite any authority for the proposition that choosing a daycare provider is a "major decision" requiring input from both parties. *Majority*, at ¶ 9. However, the daycare issue was ultimately stipulated to by the parties prior to the district court issuing its opinion. It appears the district court's reason for including it in its findings was not to modify what constitutes a major decision, but to show how Jason Capes' decision to change daycare providers resulted in a reduction of parenting time Jennifer Novak had with her children. This was only one of many examples noted by the district court of Jason Capes' attempts to control and limit Jennifer Novak's access and time with the children.

[¶ 34] I also disagree with the majority that the district court's analysis was "completely lacking." *Majority*, at ¶ 14. The district court addressed the factor that had changed—factor (e), "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14–09–06.2(1)(e). The district court issued a lengthy order discussing the factor that was at issue. I do not believe analyzing factors which were not at issue would have added to the analysis.

[¶ 35] Based on the standard of review, I would affirm.

[¶ 36] DANIEL J. CROTHERS, J., concurs.