2016 ND 69

**Patricia Lynn SCHURMANN, n/k/a Patricia Lynn Heidt, Plaintiff and Appellant**

v.

**Ralf Stefan SCHURMANN, Defendant and Appellee.**

No. 20150206.

Supreme Court of North Dakota.

March 15, 2016.

Jacey L. Johnston (argued), DeWayne A. Johnston (appeared), and Shay O'Brien (on brief), third-year law student, under the Rule on Limited Practice of Law by Law Students, Grand Forks, N.D., for plaintiff and appellant.

Ward K. Johnson III, Grand Forks, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Patricia Schurmann, now known as Patricia Heidt, appeals after the district court modified parenting time and child support. She argues the district court failed to properly weigh evidence of domestic violence in increasing Ralf Schurmann's parenting time. She also argues the court should not have reduced child support. We affirm the district court's order regarding parenting time, and reverse and remand the order regarding child support.

I

[¶ 2] In January 2013, Schurmann and Heidt were divorced. The couple has three children. The parties stipulated to the terms of the divorce, and the district court awarded primary residential responsibility and child support to Heidt and parenting time to Schurmann. Under the original divorce judgment, Schurmann was allowed to spend time with the children one time per month for up to seven days in Grand Forks. He was also allowed to spend time with the children two times per year in Arizona, where he resided. His parenting time was to increase incrementally as the children grew older. During his parenting time in Arizona, Heidt was entitled to daily visitation. The judgment required both parents to accompany the children on all flights between North Dakota and Arizona until the youngest child reached the age of 7. This required Schurmann to fly to North Dakota to meet

Heidt and the children, fly back to Arizona to exercise parenting time, and then fly again to North Dakota with Heidt and the children at the end of his parenting time in Arizona. Both parties were responsible for their own travel and accommodation expenses and were to split the costs of two trips for the children. Any additional trips were Schurmann's financial responsibility. He was also required to pay $1,600 per month in child support.

[¶ 3] After the divorce, Schurmann moved between cities but continued to reside in Arizona. Heidt and the children moved from Grand Forks to Grafton. Both parties remarried following the divorce.

[¶ 4] In January 2015, Schurmann moved to modify his parenting time and child support obligation. He said there had been a material change in circumstances warranting modification. In a supporting affidavit, he alleged the original parenting plan was impractical, given the parties' different locations; he was being alienated from the children in multiple ways; Heidt interfered during his parenting time; and the children were not being adequately supervised and cared for while in her home.

[¶ 5] The district court, finding there had been a material change in circumstances warranting modification, increased Schurmann's parenting time and decreased his child support obligation. Heidt appealed.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.

## II

[¶ 7] On appeal, Heidt argues the district court erred by increasing Schurmann's parenting time.

[¶ 8] A district court's decision regarding parenting time is a finding of fact and is subject to the clearly erroneous standard of review. *Capes v. Capes*, 2015 ND 254, ¶ 6, 870 N.W.2d 448. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court is left with a definite and firm conviction a mistake has been made." *Id.* After an initial award of primary residential responsibility, awards of parenting time are governed by N.D.C.C. § 14-05-22(2). *Simburger v. Simburger*, 2005 ND 139, ¶ 13, 701 N.W.2d 880. The district court "shall grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." N.D.C.C. § 14-05-22(2). "A restriction on visitation must be based on a preponderance of the evidence and accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation." *Wigginton v. Wigginton*, 2005 ND 31, ¶ 9, 692 N.W.2d 108.

[¶ 9] Heidt argues the district court failed to properly weigh evidence of domestic violence in increasing Schurmann's parenting time. She argues the original parenting plan included restrictions because of his propensity to act violently, and the district court misapplied the law by expanding his parenting time without clear and convincing evidence that the domestic violence presumption had been rebutted or that increasing his parenting time was in the children's best interests.

[¶ 10] Heidt relies on this Court's reasoning in *Berg v. Berg*, 2000 ND 36, ¶ 8,

606 N.W.2d 895, stating that under N.D.C.C. § 14–05–22, when the trial court finds domestic violence has occurred, there is a presumption that only supervised visitation will be allowed for the parent who committed the domestic violence. Our decision in *Berg*, however, was made prior to the 2009 amendment of N.D.C.C. § 14–05–22.

[¶ 11] Under the prior law, a finding of domestic violence triggered a presumption that only supervised visitation should be allowed unless there was a showing by clear and convincing evidence that unsupervised visitation would not endanger the child's physical or emotional health. *Berg*, 2000 ND 36, ¶ 8, 606 N.W.2d 895. In 2009, the law was amended and subsection three was removed, thereby also removing the domestic violence presumption as applied to visitation. The current law, as amended, simply states the court "shall grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." N.D.C.C. § 14–05–22(2). Any prior opinions that fail to recognize this amendment no longer apply in the context of parenting time. The domestic violence presumption that Heidt relies on is created when determining *primary residential responsibility* under N.D.C.C. § 14–09–06.2(1)(j), but after an initial award of primary residential responsibility has been made, awards of parenting time are governed by N.D.C.C. § 14–05–22(2). *Simburger v. Simburger*, 2005 ND 139, ¶ 13, 701 N.W.2d 880. This is not to say that domestic violence should not be considered in deciding whether modification of parenting time is in a child's best interests. It is clearly a best interests factor under N.D.C.C. § 14–09–06.2(1)(j). Under the plain language of the statute, however, the

presumption is created only in the context of determining primary residential responsibility. N.D.C.C. § 14–09–06.2(1)(j) ("If the court finds credible evidence that domestic violence has occurred ... this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded *residential responsibility* for the child.") (emphasis added). The statute makes no mention regarding the presumption and parenting time.

[¶ 12] Here Schurmann was not seeking residential responsibility of his children but rather was seeking a modification of his current parenting time. "Visitation should be restricted only upon a showing by a preponderance of the evidence that unrestricted visitation is likely to endanger the child's physical or emotional health." *Paulson v. Paulson*, 2005 ND 72, ¶ 21, 694 N.W.2d 681 (citing *Wigginton v. Wigginton*, 2005 ND 31, ¶ 11, 692 N.W.2d 108). After the initial determination of residential responsibility, the standard is similar to that for a modification of residential responsibility. *Simburger*, 2005 ND 139, ¶ 13, 701 N.W.2d 880. "The moving party bears the burden of establishing that a significant change of circumstances has occurred since the prior visitation order and that it is in the best interests of the child to modify the order." *Id.* A material change of circumstances means important new facts that were unknown at the time of a prior parenting time order. *Capes v. Capes*, 2015 ND 254, ¶ 7, 870 N.W.2d 448.

[¶ 13] In this case, the district court found a material change in circumstances had occurred. Specifically, the court found both parties had remarried since the initial divorce and Heidt had moved with the children from Grand Forks to Grafton. The court also noted both

parties had acknowledged the original parenting provisions were not working in the children's best interests. This Court has recognized that a move by a parent may constitute a material change in circumstances. *Jensen v. Jensen*, 2013 ND 144, ¶ 15, 835 N.W.2d 819. An environment that endangers the child's physical or emotional health is considered a material change in circumstances. *Glass v. Glass*, 2011 ND 145, ¶ 13, 800 N.W.2d 691. Conflict and lack of agreement between parents regarding the initial parenting plan may also constitute a material change in circumstances warranting modification of parenting time. *Hoverson v. Hoverson*, 2015 ND 38, ¶ 22, 859 N.W.2d 390. Here the district court held:

> Both parties recognize limitations in the current parenting time schedules, although for different reasons. The court finds that the current practices are not working for either of them, leaving the children with less than optimal time with Ralf. It also exposes the children to controversies between the parties about parenting time. In addition, the Judgment indicates that Ralf is to exercise monthly parenting time in Grand Forks, ND. Since neither of the parties lives in Grand Forks, ND there is no logical reason why Ralf should be required to exercise parenting time in Grand Forks, ND. Accordingly, the court finds there has been a material change in circumstances justifying a modification of parenting time. That modification would be beneficial to the children, and in the children's best interests so that they maintain a healthy relationship with their father, Ralf.

On the basis of these findings, the district court properly found a material change in circumstances justifying modification in this case.

[¶ 14] The district court also considered Schurmann's history of domestic violence in modifying parenting time. The court found he had committed domestic violence against Heidt during the parties' marriage. The court found that much of this violence was attributed to his high stress level at the time and his consumption of alcohol. The court also considered Heidt's testimony that he did not handle young children well and got along better with older children. The court found both parties express care and affection for the children, and there was no evidence presented that Schurmann consumes alcohol to excess or is violent with the children while exercising his parenting time. On the basis of these findings, the district court held:

> There is no evidence that the children have suffered either physical or emotional harm as a result of unsupervised parenting time. . . . It would be beneficial for the children to maintain a relationship with their father and it is in the children's best interests to continue Ralf's unsupervised parenting time with them.
>
> There was no evidence that, since the parties' divorce, there has been any threat by Ralf to the children when he exercises his parenting time, either through anger or brandishing a gun. . . . [T]here is no rational basis that would require Patricia have visitation with the parties' children during Ralf's parenting time, except via Skype or telephone, or unless Ralf otherwise agrees to it.

The district court then increased Schurmann's parenting time, holding:

> It would be beneficial for the children, and is in the children's best interests to have continued extended periods of time with Ralf. The evidence does not support the need for supervised parenting time. . . .

. . . .

In establishing parenting time, the court also considers the children's emotional and physical maturation and development. This supports a graduated period of extended summer parenting time. It would be beneficial for the children if the period for Ralf's summer parenting time is set for a greater time period than currently allowed to ensure that they do develop and maintain a parent/child relationship.

On the basis of these findings, the district court complied with the requirements of N.D.C.C. § 14-05-22(2). The court properly considered the proximity of the domestic violence in this case and found there was no evidence suggesting that increasing Schurmann's parenting time would endanger the children's physical or emotional health. The court found a material change in circumstances had occurred and it was in the children's best interests and would be beneficial to them to increase their father's parenting time, thereby allowing them to spend more extended periods of time with him. These findings were not clearly erroneous.

### III

[¶ 15] Heidt also argues the district court erred by not giving appropriate weight to the recommendations of a child psychologist who advised the Schurmanns at the time of their stipulation. She argues the district court's failure to give appropriate weight to the recommendations effectively penalized her for attempting to resolve the initial litigation by agreement, rather than utilizing the psychologist as an expert witness at trial.

[¶ 16] While both parties were guided by the child psychologist's suggestions when entering into the stipulation, the psychologist's suggestions are not automatically pertinent in the present day. In its order, the district court recognized the children were seeing a child psychologist at the time of the divorce and some of the psychologist's recommendations were incorporated into the parties' stipulation. The district court also recognized, however, that no expert testimony was ever provided regarding the recommendations. Nothing would require the district court to rely on them. As detailed above, the district court properly found material changes in circumstances had occurred, warranting modification of the parenting plan. These material changes were not present when the psychologist made recommendations to the Schurmanns, and any recommendations may very well be different in the present circumstances. The district court did not err in its consideration of the psychologist's recommendations.

### IV

[¶ 17] Heidt also argues the district court erred in its child support calculation. She argues the court improperly relied on Schurmann's tax returns and failed to account for his experience level in calculating his income.

[¶ 18] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. Under N.D.C.C. § 14-09-08.4(4), if a prior child support order was entered at least one year before the motion to modify, the district court must apply the child support guidelines and order support in the presumptively correct amount, unless the presumption is rebutted. *See Oien v. Oien*, 2005 ND 205, ¶ 7,

706 N.W.2d 81. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Verhey v. McKenzie*, 2009 ND 35, ¶ 5, 763 N.W.2d 113. "The child support guidelines require income to be 'sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income.'" *Machart v. Machart*, 2009 ND 208, ¶ 15, 776 N.W.2d 795 (citing N.D. Admin. Code § 75–02–04.1–02(7)).

[¶ 19] Under the child support guidelines:

> If the obligor fails, upon reasonable request made in any proceeding to review a child support obligation, to furnish reliable information concerning the obligor's gross income from earnings, and if that information cannot be reasonably obtained from sources other than the obligor, income must be imputed based on the greatest of:
> a. Subdivisions a through c of subsection 3; or
> b. The obligor's net income, at the time the child support order was entered or last modified, increased at the rate of ten percent per year.

N.D. Admin. Code § 75–02–04.1–07(10).

[¶ 20] Here the court found Schurmann's monthly child support obligation should be reduced from $1,600 to $1,144. In making this finding, the court considered his tax returns and found they were incomplete or evasive and by themselves did not appear to be reliable. "[T]his Court cautions against practices in which obligors intentionally distort income in order to reduce child support obligations and trial courts should not allow self-employed individuals to stray too far in accepting inaccurate tax returns as the basis for computing child support." *Torgerson v. Torgerson*, 2003 ND 150, ¶ 20,

669 N.W.2d 98. The district court appropriately noted that the burden was on Schurmann to provide appropriate and reliable information to support a modification of child support. *Devine v. Hennessee*, 2014 ND 122, ¶ 11, 848 N.W.2d 679. Despite the court's finding Schurmann's evidence to be inaccurate, incomplete, and evasive, it still relied on this information to decrease his support obligation. Because the court found that Schurmann's income information was unreliable, he failed to meet his burden to modify support. To hold otherwise would give Schurmann the benefit of using incomplete, inaccurate, and evasive information to reduce a child support amount to which he himself had originally stipulated.

[¶ 21] The district court also included as in-kind income a gift received, citing *Cook v. Eggers*, 1999 ND 97, 593 N.W.2d 781. The court failed to recognize that the current guidelines—unlike the guidelines at the time of *Cook*—limit in-kind income to that received "from employment or income-producing activity," precluding the gift here. *See* N.D. Admin. Code § 75–02–04.1–01(5). The gift may have been included as income under N.D. Admin. Code § 75–02–04.1–01(4)(b), but that would be subject to the discretionary analysis of N.D. Admin. Code § 75–02–04.1–02(8). *See State ex rel. K.B. v. Bauer*, 2009 ND 45, ¶ 13, 763 N.W.2d 462 ("[U]nder N.D. Admin. Code § 75–02–04.1–02(8), the court has discretion to exclude past earnings that are not an accurate predictor of future income. . . ."). The guidelines clearly state that when an obligor fails to furnish reliable information on request, income must be imputed. N.D. Admin. Code § 75–02–04.1–07(10). Information was requested. The guidelines currently require that underemployment analysis use the "sixtenths of this state's *statewide average* earnings for persons with similar work

history and occupational qualifications." N.D. Admin Code § 75–02–04.1–07(2)(a) (emphasis added). The exhibit submitted by Heidt, however, is not the statewide average, but the Grand Forks average. The record reflects that prior to this proceeding, no prior level of net income had been established for Schurmann.

[¶ 22] Because the district court relied on unreliable information to calculate child support in this case, the court failed to comply with the guidelines. We conclude the court's child support calculation was clearly erroneous. We reverse and remand for recalculation of child support, and the district court may take additional evidence to do so.

## V

[¶ 23] We affirm the district court's order regarding parenting time, concluding the court did not err in modifying Schurmann's parenting time. We reverse the district court order regarding child support and remand for recalculation.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.